STATE OF NORTH CAROLINA v. WALTER OLIVER MELVIN

No. 8612SC1071

(Filed 7 July 1987)

1. **Searches and Seizures § 15— bank accounts—no privacy interest of defendant —SBI's investigation no "search"**

Defendant attorney had no Fourth Amendment privacy interest in the banking records of an estate account and of his personal rental account, and an SBI agent's conversations with a bookkeeper at the bank concerning the balance in the accounts in question could not constitute a governmental "search" for Fourth Amendment purposes; therefore, the trial court properly denied defendant's motion to suppress the bank records of the estate account and his individual rental account.

2. **Embezzlement § 5— embezzlement from estate account—widow's testimony as to need admissible**

In a prosecution of defendant attorney for embezzlement of funds from an estate account, the trial court did not commit prejudicial error in allowing into evidence testimony by a widow that she needed the funds to keep her children in college, since defendant failed to show that, had the evidence been excluded, the jury would have reached a different result.

3. **Embezzlement § 6— attorney's deposit of check into personal account—sufficiency of evidence of embezzlement**

In a prosecution of defendant attorney for embezzlement, evidence that defendant deposited a Veteran's Administration insurance check into his own personal account rather than into an estate account and that he subsequently failed to turn the funds over to the widow was sufficient to be submitted to the jury.

APPEAL by defendant from judgment entered by *Barnette, Judge.* Judgment entered 10 April 1986 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 4 March 1987.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General G. Patrick Murphy and Special Deputy Attorney General William N. Farrell, Jr., for the State.*

*Hutchens & Waple, by Mark L. Waple, for defendant-appellant.*

GREENE, Judge.

Defendant was convicted of embezzlement and sentenced to three years' imprisonment. Defendant appeals.

The State's evidence showed that Mrs. Sarah Lewis employed defendant, an attorney, to assist her in the administration of her husband's estate. In December 1982, defendant and Mrs. Lewis opened an estate account at the United National Bank in Fayetteville (hereinafter, "UNB") and deposited a check for $19,950.10, which check represented the proceeds of a life insurance policy of Mrs. Lewis's deceased husband, Moses Lewis, Jr. Mrs. Lewis only authorized defendant to expend funds necessary to pay estate expenses and renounced her right to serve as administratrix of the estate in his favor. After conferring with defendant in August 1984, Mrs. Lewis became concerned the estate had not been settled. Defendant subsequently gave her an estate check for $11,936.15 and instructed her to hold the check briefly before cashing or depositing it. A few days later, Mrs. Lewis found the check was drawn on insufficient funds and contacted the State Bureau of Investigation.

The SBI was apparently already investigating defendant's handling of other trust accounts at various banks, including UNB. Based upon the information from Mrs. Lewis, an SBI agent informally conferred with a UNB bookkeeper on 19 December 1984 and confirmed the Moses Lewis, Jr., estate account had insufficient funds to cover the check defendant gave Mrs. Lewis. Based in part on these conversations, the SBI agent secured a search warrant on 25 January 1985 and seized all UNB bank records of the estate account of Moses Lewis, Jr. An affidavit in the record also reveals the SBI seized UNB records of defendant's personal rental account in connection with a search warrant issued for investigation of another UNB estate account defendant administered.

Contending the SBI agent's conversation with the UNB bookkeeper constituted a warrantless search that tainted any governmental use of defendant's bank records at trial, defendant moved prior to trial to suppress all evidence of transactions occurring in either defendant's personal rental account or the estate account which defendant administered. The court denied defendant's motion to suppress this evidence. Defendant also moved *in limine* to

strike any inflammatory testimony by Mrs. Lewis which might indicate to the jury she had suffered hardship from lack of the estate monies. This motion was also denied.

At trial, the State introduced the bank records of both defendant and the estate pursuant to a *subpoena duces tecum* issued to UNB's president. Those records showed numerous checks written to defendant on the estate account. The records also reflected the deposit in defendant's rental account of a Veteran's Administration insurance check payable to defendant as estate administrator in the sum of $5,028.75. The check was endorsed by defendant but proceeds of the check were never transferred to the estate account. At the conclusion of the State's evidence, defendant's motion to dismiss was denied.

The issues for this Court's determination are: 1) whether defendant had standing to object to the alleged warrantless search of the UNB records of the estate of Moses Lewis, Jr.; 2) whether the UNB records of defendant's personal rental account were properly admitted into evidence; 3) whether the trial court erred in denying defendant's motion *in limine*; and 4) whether the trial court erred in denying defendant's motion to dismiss.

I

[1] Defendant first contends the search warrant seeking the bank records of the estate of Moses Lewis, Jr., was the product of an unlawful search and seizure which violated defendant's rights under the Fourth and Fourteenth Amendments of the U.S. Constitution and Article I, Section 20 of the Constitution of North Carolina. Specifically, defendant argues the conversation between the SBI agent and the UNB bookkeeper constituted an unlawful warrantless search, the fruits of which tainted the subsequent warrant for search and seizure of the estate bank records.

A party seeking shelter under the Fourth Amendment has the burden of establishing that his personal rights were violated by the State's search and seizure. *State v. Jones*, 299 N.C. 298, 306, 261 S.E. 2d 860, 865 (1980). The United States Supreme Court has held the Fourth Amendment only protects those persons having a reasonable expectation of privacy in the premises searched. *Rakas v. Illinois*, 439 U.S. 128, 148 (1978).

In this case, defendant made no showing of any circumstances giving rise to his reasonable expectations of privacy as an individual in the banking records of the estate account of Moses Lewis, Jr. In *State v. Overton*, 60 N.C. App. 1, 298 S.E. 2d 695, *disc. rev. denied and appeal dism'd*, 307 N.C. 580, 299 S.E. 2d 652 (1983), defendant moved to suppress evidence concerning his bank and credit union accounts on the ground his Fourth Amendment protection against unreasonable searches and seizures had been violated. Citing *United States v. Miller*, 425 U.S. 435 (1976), the *Overton* Court held defendant had no standing to contest the bank's disclosure of his bank records. 60 N.C. App. at 31, 298 S.E. 2d at 713. In *Miller*, the United States Supreme Court specifically held a defendant's Fourth Amendment rights were not abridged when the records of defendant's bank accounts were disclosed in response to a *subpoena duces tecum*. The Court found there was no intrusion into any area protected by the Fourth Amendment:

> On their face, the documents subpoenaed here are not respondent's "private papers." . . . [R]espondent can assert neither ownership nor possession. Instead, these are the business records of the banks. . . . The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government. This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.

425 U.S. at 440-43 (citations omitted).

Defendant argues *Miller* is distinguishable since the bank in *Miller* was subject to a *subpoena duces tecum* while, in the instant case, the UNB bookkeeper transmitted certain information about the status of the estate account to the SBI without legal process. Defendant overlooks our conclusion in *Overton* that defendant had no Fourth Amendment interest in his bank records regardless of the manner by which they were obtained. We there stated

> Defendant's contentions that his Fourth Amendment rights were violated when the state obtained an Application

for Examination of Records instead of a subpoena *duces tecum and when it received some records without even this document* are meritless. He had no standing to contest the disclosure of the information, and his motion to suppress was, therefore, properly denied.

60 N.C. App. at 31, 298 S.E. 2d at 713 (emphasis added).

Defendant's argument that he somehow acquired Fourth Amendment standing by virtue of the SBI agent's informal conversation with the UNB bookkeeper rests on the following footnote from the *Miller* decision:

> This case differs from *Burrows v. Superior Court* [a California Supreme Court decision], in that the bank records of respondents' accounts were furnished in response to 'compulsion by legal process' in the form of subpoenas *duces tecum*. The court in *Burrows* found it 'significant . . . that the bank [in that case] provided the statements to the police in response to an informal oral request for information.' [Citations omitted.]

425 U.S. at 445 n.7. Defendant ignores this footnote's context and therefore misperceives the "difference" it notes between constitutional and statutory challenges to search and seizure. After denying defendant's Fourth Amendment interest in bank records, the *Miller* court stated:

> Respondent contends not only that the subpoena *duces tecum* directed against the banks infringed his Fourth Amendment rights, but that a subpoena issued to a bank to obtain records maintained pursuant to the [1970 Bank Secrecy Act, 12 U.S.C.A. Sec. 1829b *et seq.* (West 1980) and 31 U.S.C.A. Sec. 5311 *et seq.* (West 1983 and Supp. 1987)] is subject to more stringent Fourth Amendment requirements than is the ordinary subpoena. In making this assertion he relies on our statement in *California Bankers Assn., supra,* at 52, 39 L.Ed. 2d 812, 94 S.Ct. 1494, that access to the records maintained by banks under the Act is to be controlled by 'existing legal process.'

425 U.S. at 445 (text to which footnote 7 is appended).

Reading the *Miller* footnote in context, it is clear the presence or absence of "existing legal process" does not affect one's privacy interest in bank records under the Fourth Amendment; instead, the court simply acknowledges one may have *statutory* grounds to challenge the manner by which such records are obtained, irrespective of one's standing under the Fourth Amendment. *E.g.*, 31 U.S.C.A. Sec. 5317 (West 1983) (setting forth federal statutory requirements for legal process under former Bank Secrecy Act); *compare* 12 U.S.C.A. Sec. 3401 *et seq.* (West 1980) ("Right to Financial Privacy Act" restricting types of federal access to bank records) *with SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984) (purpose of financial privacy statute is to fill "gap" left by *Miller* ruling that customer has no constitutional standing to contest access to financial records). Defendant has cited us no statutes similarly regulating the access of State agencies to defendant's bank accounts. We note that even the federal Right to Financial Privacy Act only authorizes civil penalties or injunctive relief as remedies; by implication, Congress did not deem suppression of evidence to be an appropriate remedy. *United States v. Kington*, 801 F. 2d 733, 737 (5th Cir. 1986).

Since defendant therefore had no Fourth Amendment privacy interest in the UNB records under *Miller*, the SBI agent's conversation with the UNB bookkeeper could not constitute a governmental "search" for Fourth Amendment purposes. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984) ("search" occurs when government infringes reasonable expectation of privacy). The trial court therefore correctly denied defendant's motion to suppress the bank records of the estate of Moses Lewis, Jr.

## II

Defendant contends the trial court should have excluded evidence of his own personal rental account. For the reasons previously discussed with respect to the UNB estate account records, we find under *Miller* and *Overton* that defendant had no standing to object to the bank's turnover of its records of defendant's individual rental account.

## III

[2] Defendant next contends the following testimony of Mrs. Lewis was irrelevant and should have been excluded by the trial court:

Q. Can you tell the jury for what purposes you were at-
tempting to contact Mr. Melvin?

A. I asked him how long it was going to take him to
finish settling my husband's estate due to the fact that this
was my main source of money and I would like to get it be-
cause I had two children. I had two children in college, my
daughter was at UNC-G in Greensboro and my son was in
veterinary medicine at Tuskeegee Institute in Alabama and I
needed these funds to pay some bills for them to keep them
in school.

Among other things, the State argues the evidence was relevant
to the issue of Mrs. Lewis's credibility. Defendant contends the
testimony was likely to inflame the jury's emotions resulting in a
decision based on sympathy, not the evidence.

Even if we assume the evidence was irrelevant under N.C.R.
Evid. 401, we nonetheless find no reversible error since defendant
has not shown the testimony misled the jury or otherwise preju-
diced his case. The admission of irrelevant evidence is generally
considered harmless error. The defendant has the burden of show-
ing he was prejudiced by the admission of the evidence. *State v.
Alston*, 307 N.C. 321, 339, 298 S.E. 2d 631, 644 (1983). In order to
show prejudice, defendant must meet the statutory requirements
of N.C.G.S. Sec. 15A-1443(a) (1983):

A defendant is prejudiced by errors . . . when there is a
reasonable possibility that, had the error in question not
been committed, a different result would have been reached
at the trial out of which the appeal arises. The burden of
showing such prejudice under this subsection is upon the de-
fendant.

In the present case, defendant has failed to carry his burden of
showing any prejudice by the admission of Mrs. Lewis's testi-
mony. The evidence in this case was overwhelmingly against de-
fendant. Defendant nowhere suggests that, had this evidence
been excluded, the jury would have reached a different result.
Therefore, the trial court properly denied defendant's motion *in
limine* to exclude this testimony.

IV

**[3]** At the conclusion of all the evidence, defendant's motion to dismiss was denied. Defendant now argues the State presented no evidence he personally received any estate funds and specifically contends the State failed to identify the signature on the disputed checks as being defendant's.

Upon a motion to dismiss a criminal action, all the evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable inference from that evidence. *State v. Smith*, 300 N.C. 71, 78, 265 S.E. 2d 164, 169 (1980). In considering the motion, the court must determine whether there is substantial evidence of each essential element of the offense charged. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* at 78-79, 265 S.E. 2d at 169.

In order to convict a defendant of embezzlement under N.C.G.S. Sec. 14-90 (1986), the State must prove three distinct elements: 1) that defendant, being more than sixteen years of age, acted as an agent or fiduciary for his principal; 2) that he received money or valuable property of his principal in the course of his employment and through his fiduciary relationship; and 3) that he fraudulently or knowingly and willfully misapplied or converted to his own use the money or valuable property of his principal which he had received in his fiduciary capacity. *State v. Pate*, 40 N.C. App. 580, 583, 253 S.E. 2d 266, 269, *cert. denied*, 297 N.C. 616, 257 S.E. 2d 222 (1979). Defendant challenges only the third element. In order to prove this element, it is not necessary to show defendant converted the property to his own use, provided the State shows defendant fraudulently or knowingly and willfully misapplied the property for purposes other than those for which he received it as agent or fiduciary. *Id.* at 583-84, 253 S.E. 2d at 269.

Viewed in the light most favorable to the State, the evidence in this case was sufficient to allow the reasonable inference that defendant either fraudulently or knowingly and willfully misapplied or converted estate funds for improper purposes. Defendant received a check from the Veteran's Administration in the amount of $5,028.75 and deposited those monies directly into his personal rental account. There is no evidence the proceeds were

Taylor v. N.C. Dept. of Transportation

ever transferred into the estate account or made available to Mrs. Lewis. On the contrary, the evidence showed that defendant wrote an estate check to Mrs. Lewis in the amount of $11,386.15, which check was returned by UNB for insufficient funds.

Knowing the money was not his, defendant nonetheless deposited the VA check into his personal account. Such evidence is sufficient to show embezzlement. In *State v. Buzzelli*, 11 N.C. App. 52, 180 S.E. 2d 472, *cert. denied*, 279 N.C. 350, 182 S.E. 2d 583 (1971), defendant, charged with embezzlement, had deposited $600.00 of her employer's funds into her own personal account. The Court found that action sufficient evidence from which a jury could "legitimately find that defendant fraudulently embezzled and converted to her own use the sum of $600.00 of her employer's funds." *Id.* at 55, 180 S.E. 2d at 475. We likewise find that defendant's deposit of the Veteran's Administration insurance check into his personal account and subsequent failure to turn the funds over to Mrs. Lewis is sufficient evidence of embezzlement for the jury. Accordingly, the trial court properly denied defendant's motion to dismiss.

No error.

Judges ARNOLD and MARTIN concur.