STATE v. WHITTED

[99 N.C. App. 502 (1990)]

---

STATE OF NORTH CAROLINA v. EARL WHITTED, JR.

No. 898SC886

(Filed 17 July 1990)

1. **Embezzlement § 5 (NCI3d) — attorney — embezzlement of client funds — evidence of other offenses**

The trial court did not err in the prosecution of an attorney for embezzlement of client funds by admitting evidence of misapplication of funds of another client. The evidence was

admissible to prove defendant's knowledge, intent and lack of mistake. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Embezzlement §§ 49, 52.**

2. **Searches and Seizures § 15 (NCI3d)— bank records—no reasonable expectation of privacy**

The fourth amendment rights of an attorney charged with embezzlement were not violated when the State obtained records from a bank account because defendant failed to establish that he had a reasonable expectation of privacy as to the bank records. Moreover, N.C.G.S. § 53B-4 authorizes financial institutions maintaining accounts in defendant's name to make them available to the State.

**Am Jur 2d, Searches and Seizures §§ 27, 104.**

3. **Criminal Law § 73.2 (NCI3d)— hearsay—admissible under catch-all exception**

The trial court did not err in an embezzlement prosecution by admitting a statement by the deceased victim through her twin sister where the State presented defendant with notice of intent to introduce the evidence prior to trial; the evidence was offered for the purpose of proving that the victim had thought about how the money should be used prior to her death and expressed her desire to her sister and parents, thus negating defendant's contention that the victim authorized him to hold and spend her money; and the declarant's statements possessed guarantees of trustworthiness in light of the fact that the declarant and the witness enjoyed a sisterhood of closeness, confidentiality and trust. N.C.G.S. § 8C-1, Rule 804(b)(5).

**Am Jur 2d, Evidence § 496.**

APPEAL by defendant from judgment entered 27 January 1989 by *Judge Wiley F. Bowen* in WAYNE County Superior Court. Heard in the Court of Appeals 14 February 1990.

Defendant was tried and convicted of embezzlement in violation of G.S. § 14-90. The trial court, having considered the evidence, arguments of counsel and statements of defendant, sentenced defendant to three years imprisonment. The sentence was, however, suspended and defendant was placed on supervised probation for

five years. As an additional condition of the suspended sentence, defendant was ordered to serve an active term of ninety days in prison, disbarred from the practice of law in North Carolina and fined $3,000.00. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General G. Patrick Murphy, for the State.*

*Braswell & Taylor, by Roland C. Braswell, for defendant-appellant.*

JOHNSON, Judge.

The State's evidence tended to show, *inter alia*, that some time during 1977, the victim, Alma Howard, fell and broke her leg while walking in the City of New York. She and her husband, Seaborne, hired the law firm of Morris J. Eisen, P. C. ("Eisen firm") to represent them in a personal injury action against the City. Prior to the final disposition of the lawsuit, however, the Howards moved to Mount Olive, North Carolina.

In June, 1981, Alma received a correspondence from the Eisen firm informing her the lawsuit could be settled for $10,000.00. Defendant was then hired as an intermediary between Alma and the Eisen firm.

Over the next year, Alma and her sister, Edna Pearsall, went several times to see defendant about the case. Each time they visited defendant, he informed them that he was still working on the case. Alma and Edna last visited defendant in April, 1982. Alma died 26 June 1982.

The evidence further showed that defendant maintained several bank accounts at various institutions. He had an account at First Citizens Bank which was designated as a "Trust Account." The records to that account revealed that a transaction dated 11 March 1982 resulted in a deposit of $4,197.60 to the account. Furthermore, the account had a checkline reserve feature of $1,000.00 whereby if the account was overdrawn the bank would advance funds up to the reserve limit. As of 11 March 1982, defendant owed the bank $975.48 on that account.

Prior to 11 March 1982, defendant received a check from the Eisen firm in the amount of $5,697.60. He deposited $4,197.60 and "cashed-out" $1,500.00. According to bank records, between 11

March and 19 April, defendant made the following transactions to the account in question: (1) check number 1138 payable to Earl Whitted, Jr. in the amount of $1,000.00 was drawn on the account and deposited into defendant's Branch Banking and Trust ("B B & T") account in order to cover an outstanding check defendant had written to American Express in the amount of $590.53; (2) checks number 1139 and 1140 for $186.74 and $100.00 were written to City Finance Company and Service Motor Co., respectively; (3) check number 1141 was written to American Savings and Loan in the amount of $1,545.80 to cover two months of defendant's mortgage on his house; (4) check number 1142 was drawn on the account in the amount of $490.00 and designated payroll.

Between June, 1982 and September, 1985, Edna visited defendant's office approximately 15 times asking about her sister's lawsuit. Defendant's continued response was that "he hadn't heard anything [and that] he was still working on it." Finally, in September, 1985, Edna went to defendant's office demanding the lawsuit papers because she wanted to go to New York to visit the Eisen firm. Defendant responded by saying that he no longer had the papers.

On 5 September 1985 Edna and her husband Leslie went to the Eisen firm and discovered that the case was settled for $10,000.00 and a check for $5,697.60 was mailed to defendant on 4 March 1982. Upon returning to Mount Olive, they contacted the State Bureau of Investigation ("SBI").

On 27 September 1985, defendant contacted Edna and told her that he had the money and that she could come pick it up. Defendant was informed, however, that she had contacted the SBI.

On 28 September 1985, Edna and her parents went to defendant's office where he tendered to each a check drawn on a B B & T account. Edna's check was issued for $2,136.60 while her parents each received a check for $1,068.30.

The records of defendant's B B & T account indicates that defendant transferred $4,300.00 from an account he had with Merrill Lynch to cover the checks written to Edna and her parents. The money in the Merrill Lynch account was the proceeds from a $36,406.00 deposit of a check into the account designated as the estate account of Vera Adams.

Defendant's evidence tended to show that he took the $1,500.00 cash from the Eisen check, put it into a folder along with other cash he had in his office and had held on to the money for three years.

By this appeal, defendant brings forth forty-seven Assignments of Error in which he challenges virtually every aspect of the trial. After a careful review of the record in the case at bar, we conclude that defendant received a fair trial free of prejudicial error. While we have considered all of defendant's assignments of error, we find it unnecessary to address all forty-seven. We shall restrict our discussion to the legal questions we believe to be decisive.

[1] By Assignment of Error number two, defendant contends that the trial court erred in admitting evidence of his misapplication of funds of another client pursuant to G.S. § 8C-1, Rule 404(b). In particular, defendant contends that the trial court improperly admitted evidence of his handling of a wrongful death action for his client Evelyn M. Goodman in 1984. We disagree.

As a general rule, extrinsic evidence of another offense is inadmissible to show character or propensity of the defendant to commit the crime for which he is charged. *State v. Searles*, 304 N.C. 149, 282 S.E.2d 430 (1981). Such evidence is admissible, however, to show *inter alia*, motive, intent, opportunity, plan or identity. G.S. § 8C-1, Rule 404. *See also State v. Allen*, 92 N.C. App. 168, 374 S.E.2d 119 (1988), *cert. denied*, 324 N.C. 544, 380 S.E.2d 772 (1989). Where specific mental intent or state of mind is an essential element of the offense charged, evidence of similar acts are admissible to prove defendant's intent or state of mind. *State v. Hall*, 85 N.C. App. 447, 355 S.E.2d 250 (1987). Here, the Goodman evidence was offered to prove defendant's knowledge, intent and lack of mistake. We hold that it was properly admitted for those purposes.

[2] By Assignment of Error number eight, defendant contends that the trial court improperly denied his motion to suppress and for sanctions. Defendant, in essence, contends that his rights under the Fourth Amendment of the U.S. Constitution were violated when the State obtained records from his B B & T bank account. We disagree.

Any person seeking the protection of the Fourth Amendment has the burden of establishing that his personal rights were violated by the State's search and seizure of records. *State v. Jones*, 299 N.C. 298, 306, 261 S.E.2d 860, 865 (1980). The Fourth Amendment

only protects individuals having a reasonable expectation of privacy in the searched premises. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *see also State v. Melvin*, 86 N.C. App. 291, 357 S.E.2d 379 (1987).

Since defendant failed to establish that he had a reasonable expectation of privacy as to the bank records of Alma Howard and the estate account of Vera Adams and since G.S. § 53B-4 authorizes financial institutions maintaining accounts in the defendant's name to make them available to the State, we find that the trial court correctly denied defendant's motion to suppress the bank records. Defendant's contention lacks merit.

[3] By Assignment of Error number sixteen, defendant contends that the trial court erred in allowing the State to introduce a statement by Alma Howard through her twin sister, Edna Pearsall, pursuant to G.S. § 8C-1, Rule 804(b)(5). We disagree.

G.S. § 8C-1, Rule 804 in pertinent part provides that:

(b) Hearsay Exceptions.—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(5) Other Exceptions.—A statement not specifically covered by any of the foregoing exceptions, but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it gives written notice stating his intention to offer the statement and the particulars of it, including the name and address of the declarant, to the adverse party sufficiently in advance of offering the statement to provide the adverse party with fair opportunity to prepare to meet the statement.

G.S. § 8C-1, Rule 804(b)(5).

Our Supreme Court has articulated guidelines for the admissibility of hearsay testimony under the "catchall" hearsay exceptions

established by Rules 804(b)(5) and 803(24). Because the residual nature of the above-mentioned rules are virtually identical, our Courts have adopted parallel guidelines for the admission of hearsay testimony. *See State v. Triplett*, 316 N.C. 1, 340 S.E.2d 736 (1986). The trial judge must engage in a six-part test as prescribed in *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985). Initially, however, the trial judge must find that the declarant is unavailable before applying the *Smith* test. *State v. Triplett, supra, citing United States v. Thomas*, 705 F.2d 709 (4th Cir.), *cert. denied*, 464 U.S. 890, 104 S.Ct. 232, 78 L.Ed.2d 225 (1983). Rule 804(a)(4) defines "unavailability as a witness" as situations where the declarant "[i]s unable to be present or to testify at the hearing because of death . . . ." In the instant case, the trial judge made a finding that the declarant, Alma Howard, was dead.

Once the trial judge deems the declarant as unavailable, he must apply the six-part *Smith* test. The trial judge must first make the determination that the proponent of the hearsay statements gave proper notice to the adverse party of his intent to offer it and the particulars. Detailed findings of fact are not necessary. Second, the trial judge must determine that the hearsay statements are covered by any of the four exceptions listed in Rule 804(b). While detailed findings are not necessary, the trial judge must nonetheless enter his conclusions in the record. Third, the trial judge must make a finding as to the trustworthiness of the statements offered pursuant to Rule 804(b)(5). If, in examining the circumstances, the trial judge determines that the hearsay statements meet the trustworthiness requirement, he must include in the record his findings of fact and conclusions of law. Fourth, the trial judge must determine and include in the record a statement that the hearsay statements are being offered as evidence of a material fact. Fifth, the trial judge must determine, make findings of fact and conclusions of law as to whether the proffered statements are more probative on the issue for which it is offered than any other evidence which the proponent can procure through reasonable efforts. The sixth and final prong of the *Smith* test is the determination of whether "the general purposes of [the] rules [of evidence] and the interests of justice will best be served by admission of the statements into evidence." G.S. § 8C-1, Rule 804(b)(5). The trial judge need only state his conclusions. *State v. Smith, supra.*

In applying the requirements adopted herein, we hold that the trial court properly admitted the hearsay testimony of Edna

Pearsall under Rule 804(b)(5). In considering the notice requirement, we note that prior to the trial, the State presented defendant with a notice of intent to introduce evidence by Alma Howard, pursuant to Rule 804(b)(5). Defendant thereafter filed for a *motion in limine* as to statements made by Mrs. Howard to Mrs. Pearsall. Clearly, the record shows that defendant had a sufficient amount of time to prepare for the State's intended offer.

In considering whether the proffered statements were material and probative, we recognize that the statements of Mrs. Howard were offered for the purpose of proving that Mrs. Howard had thought about how the money should be used prior to her death and expressed her desire to her sister and parents, thus negating defendant's contention that Mrs. Howard authorized him to hold and spend her money. Defendant argues, however, that the statements made by the victim did not possess circumstantial guarantees of trustworthiness and that the testimony of Mrs. Pearsall was hostile and biased. We do not agree.

In weighing the "circumstantial guarantees of trustworthiness" of a hearsay statement, the trial judge must consider: "(1) assurances of the declarant's personal knowledge of the underlying events, (2) the declarant's motivation to speak the truth or otherwise, (3) whether the declarant has ever recanted the statement, and (4) the practical availability of the declarant at trial for meaningful cross-examination." *State v. Triplett, supra* at 10-11, 340 S.E.2d at 742. In addition, the trial judge must consider the nature and character of the statements and the relationship of the parties. *State v. Triplett, supra, citing Herdman v. Smith*, 707 F.2d 839 (5th Cir. 1983).

Testifying on *voir dire*, Edna Pearsall stated that she and her sister, Alma Howard, were close and shared a confidential and trusting relationship. She also testified that she had assisted her sister in her move to North Carolina; co-signed as a surety so that her sister and brother-in-law could obtain financing for a mobile home; made the down payment on the mobile home; attended to her sister's medical needs; and opened her home to her sister prior to the time the mobile home was purchased as well as when Mrs. Howard's husband died. Further, Mrs. Pearsall testified that her sister expressed her intentions concerning what should be done with the proceeds of the lawsuit should it ever arrive.

SPENCER v. JOHNSON & JOHNSON SEAFOOD

[99 N.C. App. 510 (1990)]

In light of the fact that the declarant and Mrs. Pearsall enjoyed a sisterhood of closeness, confidentiality and trust, we believe that the declarant's expression of her intentions concerning the proceeds of the lawsuit to her sister were honest. Thus, the declarant's statements to Mrs. Pearsall possessed guarantees of trustworthiness.

We conclude that the trial judge made detailed findings of fact that sufficiently supported his holding that the hearsay statements were admissible under the purview of the catchall Rule 804(b)(5).

For all the aforementioned reasons, we find that defendant had a fair trial free of prejudicial error.

No error.

Judges ARNOLD and ORR concur.