**N.C. STATE BAR v. LEONARD**

[178 N.C. App. 432 (2006)]

THE NORTH CAROLINA STATE BAR, PLAINTIFF v. ROBERT K. LEONARD,
ATTORNEY, DEFENDANT

No. COA05-1411

(Filed 18 July 2006)

### 1. Attorneys— malpractice—embezzlement of client funds

A whole record test revealed that the trial court did not err by concluding the State Bar Disciplinary Hearing Commission's (DHC) findings of fact were competent to support its conclusions that defendant attorney violated the Rules of Professional Conduct based on mismanagement of a client's settlement money in defendant's trust account, because: (1) the State Bar does not need to show that defendant intentionally used the property entrusted to him for his own purposes, but instead it is sufficient to show that defendant fraudulently or knowingly and willfully misapplied the property for purposes other than those for which he received it as agent or fiduciary; (2) the State Bar put on substantial evidence that defendant knowingly and willfully misapplied his client's settlement money for other purposes; and (3) a charge of embezzlement constitutes conduct involving dishonesty in violation of N.C. Admin. Code tit. 27, r. 2.8, Rule 8.4 which warrants discipline.

### 2. Attorneys— malpractice—incompetent representation of a client—sharing legal fees with a nonlawyer—failing to properly supervise—willfully mismanaging client funds

A whole record test revealed that the trial court did not err by concluding the State Bar Disciplinary Hearing Commission's (DHC) findings of fact were competent to support its conclusions that defendant attorney violated the Rules of Professional Conduct based on incompetent representation of a client in a domestic relations case, sharing legal fees with a nonlawyer, failing to properly supervise a nonlawyer, and willfully mismanaging client funds entrusted to him in a fiduciary capacity.

### 3. Attorneys— malpractice—sanctions—disbarment

The State Bar Disciplinary Hearing Commission (DHC) did not err by disbarring defendant attorney based on violations of multiple Rules of Professional Conduct, because: (1) neither of DHC's errant findings of aggravation regarding indifference to making restitution and untimeliness, without the necessary find-

ing of bad faith and intentional failure to comply, diminished the other six appropriate aggravating factors where each of those were sufficient in and of themselves to warrant an escalated sanction; (2) even if the Court of Appeals agreed that DHC could have found the mitigating factors that defendant suffered from personal or emotional problems or physical or mental disability of impairment based on his evidence of panic attacks and stress, it cannot be said that DHC's potential error in not doing so amounted to an abuse of discretion; (3) the presence or absence of aggravating and mitigating factors is only one part of the evaluation of whether DHC's decision to disbar defendant was rationally based on the evidence especially given the fact that these factors are not associated with a particular type of sanction; (4) defendant has been adjudicated responsible for violating eight rules of Professional Conduct, including a criminal act that tarnished his honesty, trustworthiness, or fitness as a lawyer; and (5) defendant's violations covered a varied range of activities over a period of nearly four years, and his disbarment had a rational basis in the evidence.

## 4. Attorneys— malpractice—disbarment—denial of motion for new trial—abuse of discretion standard

The State Bar Disciplinary Hearing Commission did not abuse its discretion by denying defendant attorney's motion for a new trial even though one of the DHC panel members failed to recuse herself on her own motion after learning that an attorney from the Attorney General's office, where she also worked, had prepared an affidavit for one of the prosecuting witnesses, and after hearing evidence concerning the Attorney General's investigation of a convicted felon who worked on postconviction cases with defendant, because nothing in the record indicated that the panel member was unable to render a fair and impartial decision on defendant's interactions with his clients.

Appeal by defendant from orders entered 14 June 2005 and 27 July 2005 by the Disciplinary Hearing Commission of the North Carolina State Bar. Heard in the Court of Appeals 7 June 2006.

*Attorneys Carolin Bakewell, Katherine Jean, and David R. Johnson of the North Carolina State Bar for plaintiff-appellee.*

*White and Crumpler, by Dudley A. Witt, for defendant-appellant.*

ELMORE, Judge.

Robert K. Leonard (Leonard) appeals from an order of the Disciplinary Hearing Commission of the State Bar of North Carolina (DHC) barring him from practicing law in this state. He also appeals from an order of the DHC denying his motion for a new trial. For the foregoing reasons, we affirm the decisions of the DHC.

Leonard was investigated by the State Bar for violations of the Rules of Professional Conduct on the basis that he failed to properly maintain his trust account, commingled trust account and operational funds, and was negligent in the representation of several clients. Specifically, the DHC concluded Leonard had violated Rules 1.1, 1.3, 1.4, 1.5, 1.15-2, 5.3, 5.4, and 8.4 of the Rules of Professional Conduct based on evidence submitted regarding several clients. The relevant evidence supporting these facts is laid out below.

I.

Leonard was admitted to the State Bar in 1970. Since then he has served as an assistant county attorney and a district court judge, but has chiefly maintained a general practice in and around Winston-Salem. During that time he has represented thousands of clients, both civilly and criminally, including several facing capital murder charges. The State Bar put on evidence covering Leonard's handling of several clients, all of which together the Bar contends, makes its case for disbarment. These client matters can be broken down into four categories: Leonard's handling of Betty Wilson's funds, his work with Olin C. Robinson's divorce, his interactions with clients associated with Richard Mears, and his management of traffic clients' funds.

Betty Wilson

At some point prior to July 1999 Betty Wilson hired Leonard to represent her in a personal injury claim. Leonard contracted for a twenty-five percent fee, and on 1 July 1999 Wilson's claims were settled for $52,000.00.

Leonard deposited the funds into his trust account at BB&T that same day. Several days later, on 6 July 1999, Leonard paid himself $13,000.00, an amount constituting his entire fee. On 28 January 2000, over six months later, Leonard disbursed nearly $22,000.00 of the remaining $39,000.00 to Wilson. As of 26 December 2000 the parties have stipulated that $16,584.00 should have been held in the trust

account for Wilson's benefit. Thirty-six months later, Leonard paid $2,840.31 to Medicare on behalf of Wilson. Three months after that payment, on 22 April 2003, he disbursed the remaining money to Wilson. In May 2002, mid-way through the thirty-six months Leonard was to be holding at least $16,584.00 for Wilson, his trust account balance fell to $110.20. This was followed by a deposit of personal funds in June 2002 totaling $19,750.00, thus restoring the trust account to at least the minimum necessary. The State Bar alleges that Leonard's prolonged default in the trust account constituted embezzlement, due to his intentional withdrawals and disbursements to himself or others of money held in trust for Wilson.

Olin Robinson

In April 1996 Leonard contracted to represent Olin C. Robinson in a domestic relations case. An equitable distribution hearing occurred on 26 January 1999 that led to an 18 April 2000 order in which Robinson's wife received most of the marital property. The State Bar contends Leonard's lack of preparation for the hearing led to the imbalanced order. On 28 December 2001 Leonard filed an appeal of that order and collected $2,650.00 from Robinson for the appeal. Leonard failed to perfect the appeal and ultimately withdrew the appeal without Robinson's consent. Robinson only found out about the appeal's dismissal after discharging Leonard and receiving a copy of his file. Leonard denied Robinson's claim for a refund of the $2,650.00 fee for the appeal. When Robinson filed a grievance with the State Bar, Leonard apprised it that he would resolve the issue on 17 October 2003. It was not until a year later, after a small claims suit and an appeal to district court, that Leonard refunded Robinson the money.

Richard Mears

In 1997 or 1998 Leonard began to work on post-conviction cases with Richard Mears, a convicted felon. From this time until early 2001, Leonard worked with Mears on 15 to 20 cases. Leonard and Mears rarely met to discuss a case. Further, Leonard failed to supervise Mears or inquire into his methods of acquiring clients and collecting fees. Mears has since been convicted of illegally scheming money from the relatives of prisoners during this time frame; he apparently was promising them that their loved one would be released from prison through his political connections. Leonard continued to work with Mears on post-conviction cases even after Mears approached him with an offer to join the lucrative scheme.

N.C. STATE BAR v. LEONARD

[178 N.C. App. 432 (2006)]

The State Bar brought forth evidence of three cases involving Leonard and Mears: Johnny Chatham, Clifton Ferrell, and Larry Allred. On 12 May 1999 Leonard signed a contract with Rev. D.L. Chatham in which Leonard agreed to seek post-conviction relief for Rev. Chatham's brother, Johnny Chatham. Leonard collected a $5,000.00 fee that he paid half of to Mears. A year later in May 2000 Leonard filed a motion for appropriate relief in Chatham's case and attended a hearing on the matter in 2001. The motion was denied in January 2002. Leonard did not pursue the matter further or refund any money to Rev. Chatham.

In February 2001 Leonard undertook representation of Clifton Ferrell in his motion for appropriate relief, for which Clifton's brother paid Leonard $3,500.00 of a $5,000.00 fee. Leonard paid $1,500.00 to Mears. Leonard filed nothing on behalf of Ferrell and never met with him, nor did he refund any part of the collected fee.

Also, in March 2001, Mears collected a $15,500.00 fee from Carolyn Stover, on behalf of her son Larry Allred. Mears promised he would seek clemency for Allred and if that was unsuccessful, refund the money. In January 2002 Stover contacted Leonard, who agreed to file several motions on Allred's behalf. Later, in April 2002, Leonard filed a motion for appropriate relief that was prepared by Mears. The motion was lacking supporting documents and was facially denied as insufficient. Leonard took no other action with regard to the Allred matter.

Traffic Clients

As of January 2000, Leonard opened a separate "trust" account at Piedmont Federal designated as a "cost account." He deposited money from numerous unidentified traffic clients he was representing on a flat fee basis. The fee charged to the client included Leonard's fee and any court costs the client might have to pay. On seventeen occasions between January 2000 and July 2001 Leonard paid his personal American Express bill from the funds in the "cost account" without his clients' consent.

DHC Conclusions

Based on this evidence, the DHC concluded that Leonard had violated each of the Rules of Professional Conduct the State Bar claimed. First, his actions with Wilson's entrusted funds violated Rules 1.15-2(a) and (m) regarding trust accounts. The DHC also concluded that since these actions were knowing and intentional—and

therefore were criminal acts that reflected adversely on his fitness as a lawyer—Leonard also violated Rule 8.4. Second, with regard to Leonard's actions with Robinson, the DHC concluded he violated Rules 1.1, 1.3, and 1.4, regarding competence, diligence, and communication. Third, with regard to Leonard's actions involving Mears, the DHC concluded he violated Rules 1.1, 1.3, 1.5, 5.3, and 5.4 regarding competence, diligence, fees, supervision of a non-lawyer, and the independence of a lawyer, respectively. Based on their conclusions, and the evidence presented, the DHC ultimately concluded disbarment was the only appropriate sanction for Leonard.

## II.

**[1]** Leonard argues that the DHC erred by concluding his mismanagement of Wilson's settlement money in the trust account was knowing and intentional, thus making his actions criminal. Leonard argues there was no clear, cogent and convincing evidence that he intended to misappropriate the funds; rather, he argues that the evidence of his stress, medical illnesses, good character, and poor record keeping contradict a criminal conclusion and favor a conclusion of gross negligence. We disagree.

Our review of the DHC's findings and conclusions has been previously laid out in *N.C. State Bar v. Talford*, 356 N.C. 626, 576 S.E.2d 305 (2003). Attorney Talford was disbarred for mismanaging his trust account; this Court vacated that decision, and DHC appealed to the Supreme Court arguing that this Court lacked the authority to review a sanction by the DHC. The Court, citing to *N.C. State Bar v. DuMont*, 304 N.C. 627, 642-43, 286 S.E.2d 89, 98 (1982), noted the standard of appellate review is the "whole record test," which "requires the reviewing court to determine if the DHC's findings of fact are supported by substantial evidence in view of the whole record, and whether such findings of fact support its conclusions of law." *Talford*, 356 N.C. at 632, 576 S.E.2d at 309. After reviewing the factors in this analysis the Court concluded that a reviewing court must determine whether the DHC's decision has a "rational basis in the evidence." *Id.* at 632-34, 576 S.E.2d at 310.

> [T]he following steps are necessary as a means to decide if a lower body's decision has a 'rational basis in the evidence': (1) Is there adequate evidence to support the order's expressed finding(s) of fact? (2) Do the order's expressed finding(s) of fact adequately support the order's subsequent conclusion(s) of law? and (3) Do the expressed findings and/or conclusions adequately sup-

port the lower body's ultimate decision? We note, too, that in cases such as the one at issue, e.g., those involving an 'adjudicatory phase' (Did the defendant commit the offense or misconduct?), and a 'dispositional phase' (What is the appropriate sanction for committing the offense or misconduct?), the whole-record test must be applied separately to each of the two phases.

*Id.* at 634, 576 S.E.2d at 311.

Leonard challenges several of the DHC's findings supporting its determination that his actions were criminal.

12. By no later than April 2000, Leonard knew that Ms. Wilson would be entitled to receive at least $13, 066.92 of the settlement funds even after Medicare and her medical bills were paid.

. . .

15. Between Dec. 26, 2000 and June 30, 2002, Leonard knowingly and intentionally wrote a number of checks drawn on his BB&T trust account that were payable to himself and to the Forsyth County Clerk of Superior Court. Funds belonging to Ms. Wilson were used to pay these checks, although the payments were made for Leonard's benefit and the benefit of clients other than Ms. Wilson without her knowledge or consent.

16. Between May 2001 and May 30, 2002, Leonard knowingly and intentionally disbursed all but $110.20 of Ms. Wilson's funds to himself and other clients without Ms. Wilson's knowledge or consent.

. . .

19. The fact that there was no activity in the BB&T trust account between Nov. 11, 2001 and May 30, 2002 is evidence that Leonard was aware that he had misappropriated Ms. Wilson's funds.

We conclude, however, that there is adequate evidence to support these findings.

Adequate evidence in this circumstance is synonymous with substantial evidence, *see Talford*, 356 N.C. at 632-34, 576 S.E.2d at 309-11, and " 'evidence is substantial if, when considered as a whole, it is such that a reasonable person might accept [it] as adequate to support a conclusion,' " *N.C. State Bar v. Frazier*, 62 N.C. App. 172, 177-78, 302 S.E.2d 648, 652 (1983) (quoting *DuMont*, 304 N.C. at 643,

286 S.E.2d at 98-99 (1982)). "The whole-record test also mandates that the reviewing court must take into account any contradictory evidence or evidence from which conflicting inferences may be drawn." *Talford,* 356 N.C. at 632, 576 S.E.2d at 310. That does not mean the mere existence of evidence in the record contradicting the lower body's decision renders it reversible or gives this Court discretion to substitute its judgment between two reasonably conflicting views. Instead, "the 'whole record' rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence." *Elliott v. North Carolina Psychology Bd.,* 348 N.C. 230, 237, 498 S.E.2d 616, 620 (1998) (internal quotations omitted); *see also N.C. Dep't of Crime Control & Pub. Safety v. Greene,* 172 N.C. App. 530, 533, 616 S.E.2d 594, 598 (2005).

The State Bar introduced evidence that after Wilson's settlement was deposited in Leonard's trust account, the balance was just over $57,000.00. After 26 December 2000, the date in which the funds could not drop below $16,594.00, Leonard's trust account fell to as little as $110.20 at the end of May 2002. From May 2001 until Leonard deposited his personal funds in July of 2002, there was not enough money in the entire account to cover Wilson's funds. Nonetheless, from May 2001 until November 2001, Leonard continued to use the trust account for various unnamed traffic cases, as well as other matters, in which he deposited funds and made payments to himself and others, placing his account out of balance by over $16,500.00. He stopped using the account at all from November 2001 until the end of May 2002, when he made a withdrawal that left the balance in the account at $110.20. Even without attempting to reconcile the account, for over a year Leonard received monthly statements from BB&T that at a bare minimum would alert a reasonable person to the fact that trust account money, in particular Wilson's money, had been spent.

There was also evidence in the record to support the fact that Medicare alerted Leonard in an April 2000 letter that unless Wilson filed other claims related to the 1997 accident, her bills would not exceed $4,000.00 when finalized; in fact the final bill was $2,840.31. Still, Leonard did not release any of the remaining $16,584.00 until April 2003.

Both parties agree that the criminality, if any, of Leonard's actions arises from section 14-90 of our General Statutes, which estab-

lishes embezzlement as a crime. Leonard could be found guilty of embezzlement only if he:

> (1) . . . being more than sixteen years of age, acted as an agent or fiduciary for his principal, (2) that he received money or valuable property of his principal in the course of his employment and by virtue of his fiduciary relationship, and (3) that he fraudulently or knowingly and willfully misapplied or converted to his own use such money or valuable property of his principal which he had received in his fiduciary capacity.

*State v. Pate*, 40 N.C. App. 580, 583, 253 S.E.2d 266, 269, *cert. denied*, 297 N.C. 616, 257 S.E.2d 222 (1979); N.C. Gen. Stat. § 14-90 (2005). Leonard challenges the third element; rather than intentionally misapplying the funds in his trust account, he contends he is responsible for no more than gross negligence. Leonard is correct in his statement that the Bar, under these circumstances, must prove that he had the intent to "to embezzle or otherwise willfully and corruptly use or misapply the property of the principal for purposes for which the property is not held." *State v. Britt*, 87 N.C. App. 152, 153, 360 S.E.2d 291, 292 (1987). Importantly though, the Bar does not need to show he intentionally used the property entrusted to him for his own purposes; instead it is sufficient to show that "defendant fraudulently or knowingly and willfully misapplied the property *for purposes other than those for which he received it* as agent or fiduciary." *State v. Melvin*, 86 N.C. App. 291, 298, 357 S.E.2d 379, 384 (1987) (emphasis added) (citing *Pate*, 40 N.C. App. at 583-84, 253 S.E.2d at 269).

We determine the State Bar put on substantial evidence that Leonard knowingly and willfully misapplied Wilson's settlement money for other purposes. For months he was aware that not only was his trust account out of balance, but that it was woefully short of the necessary funds. During this time there is evidence that the Wilsons were checking in with Leonard about creditors, he was receiving notices from Medicare, and he continued to deplete the trust account by writing checks to himself and others. Although circumstantial evidence, it is nonetheless compelling. *See Pate*, 40 N.C. App. at 583-84, 253 S.E.2d at 269 ("It is not necessary, however, that the State offer direct proof of fraudulent intent, it being sufficient if facts and circumstances are shown from which it may be reasonably inferred.").

Leonard contends that his many character witnesses, testimony he is a bad record keeper, and medical evidence of stress during the

period of time in question negate a clear, cogent and convincing conclusion that his actions were criminal. This evidence may detract from the weight the DHC places on the compelling circumstantial evidence, but it does not support reversal. The DHC's findings of fact are supported by adequate evidence and those findings, in turn, support the DHC's conclusions of law that Leonard violated Rule 8.4(b) and (c) of the Rules of Professional Conduct.

"It is professional misconduct for a lawyer to: . . . (2) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (3) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" N.C. Admin. Code tit. 27, r. 2.8, Rule 8.4 (August 2005). A violation of this rule warrants discipline. *See* N.C. Gen. Stat. § 84-28(b)(2) (2005) (violation of the Rules of Professional Conduct constitutes misconduct "and shall be grounds for discipline"); *N.C. State Bar v. Mulligan*, 101 N.C. App. 524, 528-29, 400 S.E.2d 123, 126 (1991) ("Certainly, conduct sufficient to support a charge of embezzlement would also constitute conduct involving dishonesty.").

### III.

[2] Aside from the aforementioned findings, Leonard also disputes several findings related to his actions with Olin Robinson. We have reviewed the record, exhibits, and supporting documents and conclude these findings are also supported by substantial and adequate evidence. The conclusions that Leonard violated Rule 1.1, dealing with competence and necessary preparation; Rule 1.3, mandating reasonable diligence and promptness; and Rule 1.4, requiring a lawyer to communicate and consult with their client, are all supported by the DHC's findings. *See* N.C. Admin. Code tit. 27, r. 2.0 (August 2005). These conclusions also support a determination that discipline is necessary under N.C. Gen. Stat. § 84-28.

Several disputed findings regarding Leonard's cases with Richard Mears are also substantially supported by the evidence presented. These findings of fact support DHC's conclusions of law that Leonard violated: 1) Rule 5.4 by sharing his legal fees with Mears, a nonlawyer; and 2) Rule 5.3 by failing to properly supervise Mears. *See* N.C. Admin. Code tit. 27, r. 2.5 (August 2005).

Leonard did not assign error or otherwise dispute the DHC's findings of fact regarding his "cost account." As such, these findings are deemed conclusive. *See Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 591, 525 S.E.2d 481, 484 (2000) ("Where findings of

fact are challenged on appeal, each contested finding of fact must be separately assigned as error, and the failure to do so results in a waiver of the right to challenge the sufficiency of the evidence to support the finding.").

> 5. By January 2000, Leonard had opened a trust account at Piedmont Federal which he designated as a "cost account" ("Piedmont Federal cost account") to hold funds entrusted to him by clients whose traffic matters Leonard was handling.

> 6. From January 1, 2000 forward, Leonard regularly deposited into the Piedmont Federal cost account funds that had been paid to him by clients for the purpose of paying the clients' court costs.

> 7. On 17 occasions between January 2000 and July 2001, Leonard paid his personal American Express bill with client funds in the Piedmont Federal cost account.

> 8. Leonard did not have his clients' consent to use funds in the Piedmont Federal cost account for his personal benefit.

While these findings are not associated with particular conclusions of law, each supports the DHC's conclusions that Leonard violated the Rules of Professional Conduct regarding trust accounts and willfully mismanaged client funds entrusted to him in a fiduciary capacity.

### IV.

[3] Since the DHC did not err in its findings, and those findings support its conclusions regarding violations, it was not error for the DHC to discipline Leonard in some regard. We must now undertake a review of whether the DHC's sanction of disbarment was warranted by the evidence, findings, and conclusions under the whole-record test. See *Talford*, 356 N.C. at 639, 576 S.E.2d at 314. Leonard makes numerous arguments on appeal regarding potential error in DHC's determination that he be disbarred. These can be summarized as follows: a) the DHC erred by finding several aggravating factors and failing to find several mitigating factors; and b) the DHC's order of disbarment lacks the appropriate findings of fact regarding harm to the public.

### A.

As to the first of these, that the DHC erred in its finding of aggravating and mitigating factors, there is only slight merit. Pursuant to

**N.C. STATE BAR v. LEONARD**

[178 N.C. App. 432 (2006)]

N.C. Gen. Stat. § 84-28, the North Carolina State Bar has adopted aggravating and mitigating factors that can be considered by a disciplinary hearing committee to arrive at an appropriate sanction.

The hearing committee may consider aggravating factors in imposing discipline in any disciplinary case, including the following factors:

(A) prior disciplinary offenses;

(B) dishonest or selfish motive;

(C) a pattern of misconduct;

(D) multiple offenses;

(E) bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with rules or orders of the disciplinary agency;

(F) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(G) refusal to acknowledge wrongful nature of conduct;

(H) vulnerability of victim;

(I) substantial experience in the practice of law;

(J) indifference to making restitution;

(K) issuance of a letter of warning to the defendant within the three years immediately preceding the filing of the complaint.

N.C. Admin. Code tit. 27, r. 1B.0114(w)(1) (August 2005).

The DHC found aggravating factors B, C, D, I, G, and H were present in Leonard's case. While Leonard contends that the evidence is insufficient to support a finding of these aggravating factors, we disagree. The record is replete with evidence of these factors. However, the DHC did find the following aggravating factors not necessarily listed in the Rules:

10. Leonard's conduct is aggravated by the following facts:

. . .

d) He failed to make timely restitution

. . .

h) Leonard was uncooperative with Bar Counsel's attempts to conduct discovery in this matter and failed to produce copies of his American Express monthly statements and related documents as commanded by a subpoena.

Leonard contends that these findings should not be allowed to enhance his sanction because the Code section should be strictly construed to include only the listed factors, similar to aggravating factors for capital murder. Even though the Code's plain language foremost allows consideration of aggravating factors, of which can *include* those listed, we nonetheless agree with Leonard.

Section 1B.0114(w)(1) of the Code specifically identifies "indifference" in making restitution as an aggravating factor. While "untimeliness" may be indicative of indifference, we do not see the two as synonymous. Further, this same section identifies that before an attorney's recalcitrant or sluggish response to an order can be an aggravating factor, a finding of "bad faith" and "intentional failure to comply" is necessary. The DHC's finding does not rise to that level and should not support an aggravating factor.

That said, neither of these two errant findings of aggravation diminish the other six clearly appropriate aggravating factors. And if those are sufficient in and of themselves to warrant an escalated sanction, there is no prejudice to Leonard from the DHC's error.

The DHC also found Leonard's clean disciplinary record and the fact that numerous "lawyers and judges from his home county and surrounding counties testified as to his good character" were mitigating factors. Despite evidence by Leonard of panic attacks and stress, the DHC did not find that Leonard suffered from "personal or emotional problems," or "physical or mental disability or impairment," two additional mitigating factors listed in N.C. Admin. Code tit. 27, r. 1B.0114(w)(2) (August 2005). Leonard contends that the DHC failed to consider these factors for which substantial evidence was presented and this failure was an abuse of discretion. Even if we were to agree with Leonard that the DHC could have found these mitigating factors, we cannot say that the DHC's potential error in not doing so amounted to an abuse of discretion—the standard of review Leonard admits is applicable to this determination.

Foremost though, the presence or absence of aggravating and mitigating factors is only one part of our evaluation of whether the DHC's decision to disbar Leonard was rationally based on the evi-

dence, especially given the fact that these factors are not associated with a particular type of sanction.

### B.

The Supreme Court in *Talford* held that:

> in order to merit the imposition of 'suspension' or 'disbarment,' there must be a clear showing of how the attorney's actions resulted in significant harm or potential significant harm to the entities listed in the statute, *and* there must be a clear showing of why 'suspension' and 'disbarment' are the only sanction options that can adequately serve to protect the public from future transgressions by the attorney in question.

*Talford*, 356 N.C. at 638, 576 S.E.2d at 313. Leonard contends that findings supporting these two necessary factors are absent from the DHC's order and thereby warrant remand.

In *Talford* the Supreme Court reviewed a DHC order disbarring attorney Talford after discovery that he had for four years mismanaged his trust account in violation of the Rules of Professional Conduct. The Supreme Court found there was no evidence of clients losing money, and without something more, the State Bar had only demonstrated the potential for harm to Talford's clients. Therefore the Court held that:

> within the confines of defendant's circumstances, we can find no grounds—from among either the underlying evidence or the DHC's discipline-related findings of fact—that would support a conclusion that his misconduct resulted in either: (1) potential harm to clients beyond that attributable to any commingling of attorney and client funds, or (2) *significant* potential harm to clients.
>
> * * *
>
> Thus, in our view, the expressed parameters of the statute preclude the DHC on the facts of this case from imposing on defendant any sanction that requires such a showing.

Id. at 640-41, 576 S.E.2d at 315.

Notably though, *Talford* only dealt with mismanagement of a trust account. Here Leonard has been adjudicated responsible for vio-

lating eight rules of Professional Conduct, including a criminal act that tarnishes Leonard's honesty, trustworthiness, or fitness as a lawyer. These violations cover a varied range of activities and a period of nearly four years. Implicit in a finding that Leonard has violated Rule 8.4(b) and (c) is a determination that his misconduct poses a *significant* potential harm to clients. Accordingly, based upon our review of the evidence, findings, and conclusions, we hold the DHC's ultimate decision to disbar Leonard has a rational basis in the evidence. *See e.g. N.C. State Bar v. Mulligan*, 101 N.C. App. 524, 400 S.E.2d 123 (1991); *N.C. State Bar v. Frazier*, 62 N.C. App. 172, 302 S.E.2d 648 (1983).

V.

**[4]** Leonard also raises an issue regarding the DHC's denial of his motion for a new trial. The basis for his motion is that one of the DHC panel members, M. Ann Reed, a Senior Deputy Attorney with the North Carolina Attorney General's Office, "failed to recuse herself on her own motion after learning that an attorney from the Attorney General's office had prepared an affidavit for one of the prosecuting witnesses, Carolyn Stover, and hearing evidence concerning the Attorney General's investigation of Mears."

We find no error, much less an abuse of discretion, in the DHC's denial of Leonard's motion on this basis. Carolyn Stover filed a grievance against Leonard with the State Bar regarding his interactions with Mears on a case involving her son, Larry Allred. Mears was under investigation by the Consumer Protection Division of the Attorney General's office and as a part of that investigation Ms. Stover signed a two-page affidavit, apparently prepared by a person within the Office of the Attorney General, summarizing the exact same statements she made in her grievance. Both documents were presented to the DHC. Nothing in the record suggests Ms. Reed was unable to render a fair and impartial decision on Leonard's interactions with his clients.

VI.

In conclusion, after reviewing the DHC's order under the whole-record test, we find substantial evidence supporting the lower body's findings and that those findings support its conclusions. We further determine that DHC's findings and conclusions support its ultimate decision to disbar Robert Leonard. Finally, we can discern no abuse of discretion in the DHC's denial of Leonard's motion for a new trial.

Affirmed.

Judges McGEE and STEELMAN concur.