STATE OF NORTH CAROLINA v. DALLAS HILTON RHOME

No. 942SC27

(Filed 3 October 1995)

1. **Constitutional Law § 342 (NCI4th)— defendant excluded from in camera hearing—new trial granted on other grounds**

   Assuming error by the trial court in conducting an *in camera* proceeding outside the presence of defendant, since the *ex parte* hearing pertained to witnesses against defendant as to only one charge, and defendant was granted a new trial on that charge on other grounds, it was therefore unnecessary to consider whether the State demonstrated the error was harmless beyond a reasonable doubt.

   **Am Jur 2d, Criminal Law §§ 692 et seq., 910, 911, 916.**

   **Right of accused to be present at suppression hearing or at other hearing or conference between court and attorneys concerning evidentiary questions. 23 ALR4th 955.**

STATE v. RHOME

[120 N.C. App. 278 (1995)]

**2. Evidence and Witnesses § 977 (NCI4th)— witnesses' hearsay statement—trial court's reliance on race of defendant and witness—prejudicial error**

Reliance by the court, however minimal, upon the racial identity of defendant and a witness in admitting into evidence the witness's hearsay statement to an SBI agent under the "catch-all" hearsay exception constituted error, and such error was prejudicial where the objectionable hearsay constituted the prosecution's case against defendant on two charges. N.C.G.S. § 8C-1, Rule 803(24).

**Am Jur 2d, Evidence §§ 683 et seq.**

**Uniform Evidence Rule 803(24): the residual hearsay exception. 51 ALR4th 999.**

**Admissibility of statement under Rule 804(24) of Federal Rules of Evidence, providing for admissibility of hearsay statement not covered by any specific exception but having equivalent circumstantial guaranties of trustworthiness. 36 ALR Fed. 742.**

**3. Embezzlement § 24 (NCI4th)— magistrate charged with embezzling employer's funds—funds actually belonging to someone else—failure to dismiss embezzlement charge— error**

The trial court erred in denying defendant magistrate's motion to dismiss the charge of embezzlement where defendant was charged with embezzling "$9.59 in U.S. Currency belonging to [t]he State of North Carolina," but the money actually belonged to the person who had overpaid it and never "belonged," N.C.G.S. § 14-90, to the State as defendant's principal, thereby rendering nonexistent an essential element of the crime charged.

**Am Jur 2d, Embezzlement §§ 8, 36 et seq.**

**4. Judges, Justices, and Magistrates § 49 (NCI4th)— refusal to discharge duties of a magistrate—failure to instruct on duty which was violated—plain error**

Defendant is entitled to new trials on the charges of refusal to discharge the duties of a magistrate where the jury, in spite of its request for an instruction as to "what the magistrate's sworn duties are," was never instructed either upon the duties of a magistrate or, more importantly, upon the specific duty alleged in the indict-

ments to have been violated, and the court's omission could properly be characterized as plain error. N.C.G.S. § 14-230.

**Am Jur 2d, Judges § 3.**

5. **False Pretenses, Cheats, and Related Offenses § 7 (NCI4th)— attempt to obtain money by false pretense—no fatal variance between indictment and proof**

There was no fatal variance between the indictment and the evidence concerning a charge against a magistrate of obtaining property by false pretense in naming the wrong bank upon which the check in question was drawn since the name of the bank was surplusage not requiring proof; nor was there a fatal variance where the indictment charged defendant with an attempt to obtain money from a named victim but also alleged that funds paid in satisfaction of a worthless check came from the victim's mother, since the elements of the offense were satisfied by evidence tending to establish defendant's attempt to obtain money by false pretense from the person named in the indictment.

**Am Jur 2d, False Pretenses § 68; Indictments and Informations §§ 257 et seq.**

Appeal by defendant from judgments entered 2 July 1993 by Judge Robert M. Burroughs in Beaufort County Superior Court. Heard in the Court of Appeals 19 October 1994.

*Attorney General Michael F. Easley, by Senior Deputy Attorney General Isham B. Hudson, Jr., for the State.*

*Thomasin Elizabeth Hughes for defendant-appellant.*

JOHN, Judge.

Defendant appeals convictions of three counts of obtaining property by false pretense (Count I, Case Nos. 93 CRS 1394-1396), five counts of refusing to discharge the duties of a magistrate (Count II, Case Nos. 93 CRS 1394-1397 and Count II, Case No. 92 CRS 5863), and one count of embezzlement (Case No. 93 CRS 1398). He contends the trial court erred by: (1) holding an *in camera* hearing during trial from which defendant was excluded; (2) admitting certain hearsay testimony; (3) failing to dismiss the charges of embezzlement and of failure to discharge the duties of a magistrate for insufficiency of the evidence; (4) failing to dismiss the charges of failure to discharge the duties of a magistrate on grounds the indictments did not sufficiently

charge a crime; (5) improperly instructing the jury on failure to discharge the duties of a magistrate; (6) failing to dismiss the two counts in Case No. 93 CRS 1395 for fatal variances in the indictment and the evidence presented; and (7) entering judgment on one count of obtaining property by false pretense which the court had dismissed at the close of the evidence. As set out hereinbelow, we find certain of defendant's arguments persuasive.

The State's evidence at trial tended to show the following: At the time of instant charges, Dallas Rhome (defendant) had served as a magistrate in Beaufort County for seven years, having been appointed to the position in January 1985.

Mary Peele (Peele) testified defendant telephoned at her place of employment in June 1992 and reported a $74.00 check she had written to Lowe's had been received by the magistrate's office as a worthless check. Upon Peele's assurances the check would be reclaimed later in the week, defendant indicated he would retain it until she arrived. Peele subsequently paid defendant a total sum equivalent to the amount of the check plus a $20.00 service charge and $55.00 for costs of court although she had never been served with a warrant. Defendant informed Peele he would pay Lowe's and give her a receipt at another time, but she never received a receipt. Peele further declared that when paying worthless checks in the past, she had always received receipts at the magistrate's office.

According to Deborah Johnson (Ms. Johnson), a friend of defendant, she and her mother had dealt with defendant on numerous occasions concerning worthless checks. In October 1991, defendant contacted Ms. Johnson at work and informed her a check payable to Radio Shack in the amount of $211.00 had been delivered to the magistrate's office as a result of insufficient funds. Defendant later arrived at the Johnson's family-owned business and was paid $272.00 by Ms. Johnson's mother who also received no receipt. Defendant told Ms. Johnson he would take the money to Radio Shack and pay the check for her. No warrant was ever served. Ms. Johnson further related she had paid defendant directly for worthless checks on two previous occasions without warrants being issued, stating she had given him the amount of the check and "[a]bout thirty or forty dollars" above the amount without receiving a receipt.

Essie Mae McCarter, Ms. Johnson's mother, testified she had paid defendant for certain of her daughter's worthless checks, but could

not remember the particular incident regarding the check issued to Radio Shack.

Valerie Johnson-Tevaris (Johnson-Tevaris) narrated a circumstance involving a check written to Belk's of Washington that had been returned for insufficient funds. Defendant telephoned at her place of business and informed her she "needed to take care of the check." She thereafter gave money to her mother for payment of the amount of the check plus court costs. No warrant was ever issued.

Evelyn Johnson, Johnson-Tevaris' mother, testified she had "taken money to [the] courthouse and paid it to magistrates" on behalf of her daughter for worthless checks, but that she was unable to recall any amounts or when she had paid them. She remembered speaking to two officers on 30 September 1992, but could not recount any details of the conversation. After being handed a copy of her alleged statement for purposes of refreshing her recollection, she stated, "I don't remember. I just don't remember."

Regina Fisher (Fisher) stated a check she had issued to Multimedia Cable had been returned as a worthless check in July 1992. The company informed her the check had been transmitted to the magistrate's office. When Fisher phoned that office, defendant told her she "could come down there and pay the check off." Defendant directed Fisher to bring the amount of the check and "either $20 or a $50 fee." When she arrived, Fisher paid the requested sum to defendant, but was unable to recall the precise amount. No warrant was ever issued, nor was Fisher given a receipt.

Diane Mumford (Mumford), an employee of Multimedia Cable, related that she had submitted Fisher's check to defendant, who had later telephoned and inquired "Can you come back down here and pick up the money for Regina?" Mumford replied she had never done that before, and defendant commented, "What difference does it make where you get it as long as you get it or how you get it as long as you get it?" Mumford turned the matter over to her supervisor, Marsha Brown (Brown), and had no further contact with defendant.

Brown confirmed defendant had arrived at Multimedia Cable and presented the amount of Fisher's check. She further stated no other magistrate had ever come personally on such an errand, and that "[i]t was something out of the ordinary. We always went through the process of getting it done through the courts."

Other managers and employees of businesses to which the prior witnesses had written checks recounted similar experiences with defendant whereby he compensated them directly for the amount of checks without warrants being issued. They also declared no other magistrate followed this procedure.

Lee Vann Crawford (Crawford) revealed that in 1992 he had paid defendant for two worthless checks in cash by "just paying what he told me how much I had to pay" and that he "knew there was cost of court being involved . . . ." However, when he received a receipt, the total indicated paid was $9.59 greater than the sum of amounts reflected on the receipt for the checks and the costs.

Jerry Ratley (Ratley), Special Agent with the North Carolina State Bureau of Investigation, reported he and another agent had interviewed Evelyn Johnson. Ratley stated Evelyn Johnson recounted she had taken money received from her daughter to the magistrate's office and handed the envelope to defendant. Defendant checked the money and told her the amount was correct, but she was unable to recall exactly how much the envelope contained. Evelyn Johnson was not given a receipt by defendant.

In addition, Ratley indicated he and another agent had questioned defendant 2 October 1992 in the Clerk of Court's office. Defendant acknowledged that since 1991 "he let a lot of people come in and pay off checks before he issued warrants on them." Moreover, "he would call the business and find out what their service fee was on returned checks and he would make people pay that when they came in to pay off the checks." According to Ratley, "Mr. Rhome said that he knew it was wrong for him not to issue warrants against these people but instead to let them come into the magistrate's office and pay the checks off. He said that he was trying to help them." However, defendant denied ever collecting court costs from these individuals.

At the close of State's evidence, the parties entered into certain stipulations for the record. It was agreed that worthless check warrants were never issued by defendant for Regina Fisher, Deborah Johnson, Mary Peele, or Valerie Johnson-Tevaris, and that no money was ever received by the Beaufort County Clerk's Office in payment of those checks.

Following defendant's motion to dismiss all charges, the trial court dismissed the second count in Case No. 93 CRS 1397, obtaining

property by false pretense from Deborah Johnson involving a check issued to Belk's.

Defendant offered no evidence and the court denied his renewed motion to dismiss. Upon the jury's verdicts of guilty, defendant was sentenced to consecutive terms of imprisonment as follows: three years for embezzlement, three years for obtaining property by false pretense, and two years for failing to discharge the duties of a magistrate.

I.

**[1]** Defendant first argues his exclusion from an *in camera* hearing violated his right to be present at every court proceeding and requires a new trial on all charges.

Article I, Section 23 of the North Carolina Constitution provides that "[i]n all criminal prosecutions, every person charged with crime has the right . . . to confront the accusers and witnesses with other testimony . . . ." Under the section, " '[t]he appropriate question is whether there has been any interference with defendant's opportunity for effective cross-examination.' " *State v. Seaberry*, 97 N.C. App. 203, 211, 388 S.E.2d 184, 189 (1990) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745, n.17, 96 L. Ed. 2d 631, 647, n.17 (1987)).

Further, "[a] defendant's right to be present at every stage of trial also has a due process component." *Id.* (citation omitted). "[T]his right is not restricted to situations where defendant is actually confronting witnesses or evidence against him, but encompasses all trial-related proceedings at which defendant's presence 'has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.' " *Id.* (quoting 3 W. LaFave & J. Israel, *Criminal Procedure* § 23.2(c) (Supp. 1989)). Under due process analysis, " 'the question is not simply whether "but for" the outcome of the proceeding, the defendant would have avoided conviction, but whether the defendant's presence at the proceeding would have contributed to the defendant's opportunity to defend himself against the charges.' " *Id.* (citation omitted).

Moreover, "[i]f the defendant's absence from [the] proceeding constitutes error, a new trial is required unless the State demonstrates the error was harmless beyond a reasonable doubt." *State v. Daniels*, 337 N.C. 243, 257, 446 S.E.2d 298, 307 (1994), *cert. denied*, 130 L. Ed. 2d 895 (1995) (citation omitted).

In the case *sub judice*, the Assistant District Attorney in open court during trial requested a meeting with the trial judge to discuss a matter "not about this case." The court in chambers stated for the record that the "hearing [was] being held *in camera* with neither the defendant nor his counsel [] present. The District Attorney asked that I address this matter without them being present because of the nature. of the situation."

It is undisputed that neither defendant nor his counsel were present in the court's chambers. There is also no disagreement that the *ex parte* conference involved the trial judge, the Assistant District Attorney and two law-enforcement officers, Ratley and S.B.I. Agent Inscoe. The court was informed that two witnesses under subpoena, Valerie Johnson-Tevaris and Evelyn Johnson, had failed to appear in court that morning, and that Evelyn Johnson had stated she did not wish to testify because "she didn't remember anything" about the matters at issue. Agent Ratley reported that Evelyn Johnson had given a long and detailed statement of events the previous year. The court observed that perhaps she was having a "case of convenient amnesia," and thereafter ordered that Evelyn Johnson and Johnson-Tevaris be placed under arrest as material witnesses until called by the State to testify. *See* N.C. Gen. Stat. § 15A-803 (1988).

The prosecutor's conduct in affirmatively misleading defendant cannot be condoned, and we perceive nothing in "the nature of the situation" which would necessitate or excuse conducting the proceeding at issue in the absence of defendant. However, Evelyn Johnson and Valerie Johnson-Tevaris were potential witnesses against defendant only as to the offenses set out in Counts I and II of Case No. 93 CRS 1394. Contrary to defendant's assertion, the instant assignment of error thus affects only Case No. 93 CRS 1394. We grant defendant a new trial on other grounds as discussed hereinbelow on both counts of that case. Therefore, assuming *arguendo* error by the trial court in conducting the *in camera* proceeding outside the presence of defendant, it is unnecessary for us to consider whether the State has "demonstrate[d] the error was harmless beyond a reasonable doubt," *Daniels*, 337 N.C. at 257, 446 S.E.2d at 307, so as to avoid the grant of a new trial in Case No. 93 CRS 1394.

## II.

Defendant next contends the trial court erred in Case No. 93 CRS 1394 by admitting under the "catch-all" hearsay exception, Rule 803(24), testimony by Ratley as to the statement given him by Evelyn

Johnson. We agree and award a new trial as to both charges in that case.

We first consider the State's claim that defendant's contention is not properly before us. "In order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent." *State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991) (citing N.C.R. App. P. 10(b)(1)).

During the direct examination of Ratley regarding the statement made by Evelyn Johnson, defendant objected, stating:

> Judge, for purposes of the record, I need to interpose an objection although I've done so already.

While arguably this comment standing alone leaves unclear the basis for defendant's objection, we note defendant similarly objected earlier during Evelyn Johnson's testimony. At that point the court conducted an extensive *voir dire* hearing regarding the admissibility of her previous statement under various exceptions to the rule prohibiting hearsay. Based upon numerous findings of fact and conclusions of law, the court admitted the evidence under Rule 803(24). Thus, the grounds of defendant's objection are apparent from the record, and the question is properly preserved for our review.

Evidence presented under the "catch-all" provision of Rule 803(24) is admissible only if that evidence is found by the trial court to have indicia of reliability equivalent to those upon which other recognized hearsay exceptions are based. *See State v. Smith*, 315 N.C. 76, 91-92, 337 S.E.2d 833, 844 (1985). Specifically, the trial court must resolve in favor of the hearsay proponent the following issues: (1) whether proper notice was given under Rule 803(24); (2) whether the evidence is specifically covered by any other hearsay exception; (3) whether the evidence possesses certain circumstantial guarantees of trustworthiness, (4) is material to the case at bar and (5) is more probative on an issue than any other evidence procurable through reasonable efforts; and (6) whether the admission of such evidence will best serve the interests of justice. *State v. Agubata*, 92 N.C. App. 651, 656, 375 S.E.2d 702, 705 (1989) (citing *State v. Triplett*, 316 N.C. 1, 9, 340 S.E.2d 736, 741 (1986)).

Defendant initially challenges the court's refusal to rule upon the matter of notice. However, the record reveals the prosecution gave

written notice of its intent to offer testimony under the catch-all exception. *See Agubata*, 92 N.C. App. at 657, 375 S.E.2d at 705-06 (letter written to prosecutor advising her of defendant's plan to introduce evidence under 803(24) sufficient notice). Therefore, defendant's assertion of lack of notice is unavailing. *Cf. In re Hayden*, 96 N.C. App. 77, 82, 384 S.E.2d 558, 561 (1989) (testimony properly excluded where record discloses notice requirement not satisfied) (citation omitted).

**[2]** Defendant further objects to the "court's overt consideration of race" in its determination of whether the statement by Evelyn Johnson to Agent Ratley was trustworthy. Defendant argues this factor had no bearing on the court's analysis and was "not only irrelevant, but highly improper, and standing alone should be deemed sufficient to require a reversal of the court's ruling."

In the process of setting out its findings regarding the admissibility of Ratley's recitation of his pre-trial interview with Evelyn Johnson, the trial court stated:

> As I noted earlier, the defendant was a black magistrate here in Beaufort County at the time and these cases up to this point have involved witnesses who were black and who had paid off checks that the magistrate had received for processing.

The State argues the circumstances noted by the court

> were not relied upon to support the trial judge's conclusion concerning the reliability of the prior statement, but rather were made to support his conclusion that the witness's [sic] prior statement was more probative on the point for which it was offered than any other evidence which the proponent could now procure through reasonable efforts.

The State's contention is belied by the record. The following appears in the trial transcript beginning on the page immediately preceding that containing the court's statement noted above:

> THE COURT: I'm going to have to make some findings. . . . The most significant requirement [under Rule 803(24)] is that the statement possess circumstantial guarantees of trustworthiness . . . . And in evaluating the reliability of the statement, I will look at the criteria which would include an evaluation of credibility of an in-court witness. The in-court witness was served with a subpoena and failed to honor the subpoena. An in-court witness had

**STATE v. RHOME**

[120 N.C. App. 278 (1995)]

an order of arrest issued for her to bring her to court today. The in-court witness could not remember events that took place. The in-court witness was given the statement taken by SBI agent on September 30, 1992 and could not remember the content of that statement.

. . . .

Statement contains material which is detrimental to the defense and conversely it contains material which is advantageous to the prosecution of the State.

The challenged portion of the court's findings immediately follows.

It is well-established that certain factors may properly be relied upon in deciding whether hearsay evidence under Rule 803(24) possesses the requisite "circumstantial guarantees of trustworthiness," *Agubata*, 92 N.C. App. at 656, 375 S.E.2d at 705: (1) assurance of personal knowledge of the underlying event by declarant; (2) declarant's motivation to be truthful or untruthful; (3) whether declarant ever recanted the statement; and (4) the practical availability of declarant at trial for meaningful cross-examination. *Smith*, 315 N.C. at 93-94, 337 S.E.2d at 844 (citations omitted).

While the trial court may have intended otherwise, the unavoidable implication of its finding is that because both defendant and the witness were members of the black race, the witness thereby possessed some type of motivation to protect defendant from prosecution by offering untruthful testimony at trial. Any judicial suggestion that racial correlation between defendants and witnesses constitutes an important factor in determining the reliability of a witness' testimony is at best inappropriate. *See Batson v. Kentucky*, 476 U.S. 79, 87-88, 90 L. Ed. 2d 69, 81-82 (1986) ("Discrimination within the judicial system is most pernicious because it is 'a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others.' ") (citation omitted); *see also State v. Cofield*, 320 N.C. 297, 303, 357 S.E.2d 622, 625 (1987) ("[e]xclusion of a racial group from jury service . . . entangles the courts in a web of prejudice and stigmatization"; selection of grand jury foreperson therefore must be based on racially neutral criteria.).

Moreover, the trial court's finding was irrelevant to the matter under consideration, i.e., the trustworthiness of Evelyn Johnson's *original* report to Ratley.

The circumstantial guarantees of trustworthiness on which the various specific exceptions to the hearsay rule are based are those that existed *at the time the statement was made, and do not include those that may be added by using hindsight.*"

*Huff v. White Motor Corp.*, 609 F.2d 286, 292 (7th Cir. 1979) (emphasis added). The racial identity of the witness and defendant had no bearing on the reliability of comments made by Evelyn Johnson when first interviewed by SBI agents. *See also Idaho v. Wright*, 497 U.S. 805, 820, 111 L. Ed. 2d 638, 655-56 (1990) ("particularized guarantees of trustworthiness" must be drawn from the totality of the circumstances surrounding declarant at time of statement which render declarant worthy of belief).

While other findings of the court directed to the circumstances of Evelyn Johnson's original statement arguably furnish sufficient indicia of reliability to support admission of Ratley's hearsay account under Rule 803(24), we are unable to determine from the record the weight accorded the factor of race. However, entry by the court of its finding in the record indisputably indicates the factor was considered by the court in its decision. Because of the "pernicious," *Batson*, 476 U.S. at 88, 90 L. Ed. 2d at 81, nature of the inappropriate and irrelevant finding, we conclude that reliance by the court, however minimal, upon the racial identity of defendant and the witness in admitting the latter's hearsay statement into evidence constituted error.

"It is well established that the erroneous admission of hearsay, like the erroneous admission of other evidence, is not always so prejudicial as to require a new trial." *State v. Ramey*, 318 N.C. 457, 470, 349 S.E.2d 566, 574 (1986). " '[T]he appellant must show error positive and tangible, that has affected his rights substantially and not merely theoretically, and that a different result would have likely ensued.' " *State v. Billups*, 301 N.C. 607, 616, 272 S.E.2d 842, 849 (1981) (quoting *State.v. Cross*, 284 N.C. 174, 200 S.E.2d 27 (1973)); N.C. Gen. Stat. § 15A-1443 (1988). The issue of whether error is reversible must be resolved in light of all surrounding circumstances. *State v. Heath*, 77 N.C. App. 264, 271, 335 S.E.2d 350, 355 (1985), *rev'd on other grounds*, 316 N.C. 337, 341 S.E.2d 565 (1986) (citation omitted).

Ratley recited Evelyn Johnson's hearsay account in pertinent part as follows:

Ms. Johnson said that she is Valerie Johnson's mother. Ms. Johnson said that she took some money to the magistrate's office

for Valerie, to pay off a check. . . . She said that she took the money in the envelope to the magistrate, Dallas Rhome. She said that she did not count the money. . . . She said that she asked Mr. Rhome if the amount was right. She said that he counted it and told her it was. Ms. Johnson said that she did not know how much money was in the envelope, but when Mr. Rhome counted it she saw the denominations of some of the bills. She said that there was at least one $100 bill, one $10 bill and one or more $20 bills. . . . Ms. Johnson said that when she gave the money to the magistrate, he stacked it by the telephone. She said that the magistrate told her the money was all right. Ms. Johnson said that Mr. Rhome did not give her a receipt.

This testimony comprised the only evidence tending to show misconduct by defendant with respect to the charges involving Valerie Johnson-Tevaris. When Johnson-Tevaris testified, she was unable to remember the specific amounts of any checks turned into the magistrate's office. Moreover, Johnson-Tevaris herself did not go to that office and couldn't "say what [her mother] did with the money." Evelyn Johnson did not recall at trial any of the events in question. Thus, Ratley's hearsay account of Evelyn Johnson's statement in essence constituted the prosecution's case against defendant on the two charges involving the check issued by Johnson-Tevaris. The trial court committed reversible error by admitting that statement into evidence based in part on the court's consideration of the racial identity of defendant and Mrs. Johnson. Accordingly, we grant defendant a new trial with respect to both counts in case 93-CRS-1394. (As to Count II, a new trial is granted upon independent grounds as indicated in paragraph V below.)

III.

[3] Defendant's next assignment of error asserts the trial court improperly denied his motion to dismiss the charge of embezzlement, Case No. 93 CRS 1398. We agree.

The State argues defendant has failed to comply with Rule 10(b)(3) of the Rules of Appellate Procedure which requires a motion to dismiss to be made at the close of the evidence in order to preserve for our review the question of sufficiency of the evidence. Our examination of the record reflects defendant proffered such a motion in the trial court, and we therefore reject the State's contention.

STATE v. RHOME

[120 N.C. App. 278 (1995)]

In ruling upon a motion to dismiss, the trial court must view the evidence in the light most favorable to the State, which is entitled to every reasonable inference to be drawn therefrom. *State v. Bates*, 313 N.C. 580, 581, 330 S.E.2d 200, 201 (1985) (citations omitted). If there is "substantial evidence" of each element of the charged offense and of defendant being the perpetrator of the offense, the motion should be denied, *State v. Riddick*, 315 N.C. 749, 759, 340 S.E.2d 55, 61 (1986) (citing *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651-52 (1982)). "Substantial evidence is that amount of evidence which a reasonable mind might accept as adequate to support a conclusion." *State v. Rich*, 87 N.C. App. 380, 382, 361 S.E.2d 321, 323 (1987) (citing *State v. Cox*, 303 N.C. 75, 87, 277 S.E.2d 376, 384 (1981)).

In order to convict a defendant of embezzlement, the State must prove three distinct elements: (1) defendant, being more than sixteen years of age, acted as an agent or fiduciary for his principal; (2) defendant received money or valuable property of his principal in the course of his employment and by virtue of the fiduciary relationship; and (3) defendant fraudulently or knowingly and willfully misapplied or converted to his own use such money or valuable property. *State v. Melvin*, 86 N.C. App. 291, 298, 357 S.E.2d 379, 383 (1987) (citation omitted).

Defendant was charged with embezzling "$9.59 in U.S. Currency belonging to [t]he State of North Carolina." He contests the sufficiency of the evidence regarding the second element of embezzlement. Specifically he maintains his principal, the State of North Carolina, possessed no property interest in the $9.59 he allegedly received from Lee Vann Crawford.

The evidence tended to show Crawford paid defendant the sum of $363.00 while the amount due was actually $353.41, a difference of $9.59. In his capacity of magistrate, defendant was statutorily permitted only to collect the amount of the worthless check, and any related fees or court costs. N.C. Gen. Stat. § 14-107; N.C. Gen. Stat. §7A-273(6). Any amount overpaid by Crawford rightfully remained his property and subject to return upon being claimed. Thus, the $9.59 never "belonged," G.S. § 14-90, to the State as defendant's principal, thereby rendering nonexistent an essential element of the crime charged. The trial court therefore erred by denying defendant's motion to dismiss the charge of embezzlement. Accordingly, the judgment in Case No. 93 CRS 1398 is reversed.

IV.

Defendant next argues the indictments alleging defendant's failure to discharge the duties of a magistrate did not sufficiently charge a crime. However, the State correctly points out that no assignment of error appears in the record relating to this issue.

Defendant moved to amend the record on appeal 16 February 1994. He sought to add "Assignment of Error No. 44" asserting the indictments as to each charge of failing to discharge the duties of a magistrate "failed to sufficiently allege a crime." Defendant's motion was denied by this Court. Therefore, this argument of defendant must fail as there appears no assignment of error upon which he can base his argument. *See* N.C.R. App. P. 10(a).

V.

**[4]** Defendant further questions whether there existed sufficient evidence to support submission to the jury of the charges of refusing to discharge the duties of a magistrate, Case Nos. 93 CRS 1394, 1395, 1396, 1397, and 92 CRS 5863. He contends no evidence was presented at trial that issuance of warrants is a required duty of a magistrate. Whether or not this argument has merit, we nonetheless must allow new trials in these cases on the basis of defendant's corresponding contention that the jury was improperly instructed regarding his alleged failure to discharge the duties of a magistrate. As we have previously awarded defendant a new trial in Case No. 93 CRS 1394, we note the reasoning herein provides an additional basis for awarding a new trial in Count II of that case.

The State insists the assignment of error upon which defendant's latter argument is based "is an egregious violation of N.C. R. App. P. 10(c)(1) because of the innumerable distinct errors of law it purports to assign." Rule 10(c)(1) of the North Carolina Rules of Appellate Procedure states in pertinent part:

> Each assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned.

"An assignment of error which 'attempts to present several different questions of law in one assignment [is] . . . broadside and ineffective.' " *State v. McCoy*, 303 N.C. 1, 19, 277 S.E.2d 515, 529 (1981) (citations omitted).

The assignment of error challenged by the State reads:

**STATE v. RHOME**

[120 N.C. App. 278 (1995)]

The trial court's instructions to the jury on the elements of the offenses of obtaining property by false pretense, embezzlement, and refusing to discharge the duties of a magistrate, on the grounds that the instructions misstated the law, were too vague to sufficiently guide the jury, permitted the return of guilty verdicts without a finding of all the elements of the offenses, and on the grounds that the court's action was in violation of the Fifth, Sixth, and Fourteenth Amendments and Article I, §§ 18, 19, and 23 of the North Carolina Constitution, and was otherwise contrary to North Carolina statutory and common law.

Defendant's argument not only challenges the court's instructions misstated the law and were too vague, but further alleges numerous constitutional violations. While this indeed may amount to a violation of the appellate rules, *see Fine v. Fine*, 103 N.C. App. 642, 644-45, 406 S.E.2d 631, 633 (1991), neither the alleged constitutional violations nor the court's instructions on the offenses of false pretense and embezzlement (Count I, Case Nos. 93 CRS 1395, 93 CRS 1396, and 93 CRS 1397, and Case No. 93 CRS 1398) were ever discussed in defendant's brief. These arguments are thus in any event deemed abandoned. N.C.R. App. P. 28(a). We elect in our discretion to consider defendant's argument concerning the charges of failing to discharge the duties of a magistrate. *See* N.C.R. App. P. 2.

Defendant failed to object to the trial court's instructions as to those charges or request a specific instruction. On appeal, he concedes this question consequently has not been properly preserved for our review. *See* N.C.R. App. P. 10(b)(2). Notwithstanding, defendant urges this Court to apply the "plain error" rule. *See State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). "In order to obtain relief under this doctrine, defendant must establish . . . error, and that, in light of the record as a whole, the error had a probable impact on the verdict." *State v. Bell*, 87 N.C. App. 626, 635, 362 S.E.2d 288, 293 (1987) (citation omitted).

N.C. Gen. Stat. § 14-230 (1993) states in pertinent part:

If any . . . magistrate . . . shall willfully omit, neglect or refuse to discharge any of the duties of his office, for default whereof it is not elsewhere provided that he shall be indicted, he shall be guilty of a misdemeanor.

The essential elements of the offense therefore include: (1) the willful omission, neglect or refusal to discharge the duties of the office of

magistrate by (2) a magistrate, an official of a state institution rather than a state employee. *State v. Eastman*, 113 N.C. App. 347, 350, 438 S.E.2d 460, 462 (1994). Further, injury to the public must occur as a consequence of the omission, neglect or refusal. *State v. Anderson*, 196 N.C. 771, 773, 147 S.E. 305, 306 (1929).

It is well established that

[t]he defendant in a criminal action has a right to a full statement of the law from the court. Failure to specifically charge the jury on every element of each crime with which the defendant is charged is not error per se, requiring reversal, but reversal is mandated in such a case if the jury consequently falls into error.

75A Am. Jur. 2d *Trial* § 1124, at 642 (1991) (emphasis added). Thus, in instructing the jury, the trial court must "*correctly* declare and explain the law as it relates to the evidence." *State v. Watson*, 80 N.C. App. 103, 106, 341 S.E.2d 366, 369 (1986); *see also Bird v. United States*, 180 U.S. 356, 361, 45 L. Ed. 570, 573 (1901) ("The chief object contemplated in the charge of the judge is to explain the law of the case, to point out the essentials to be proved on the one side and the other . . . .").

Moreover,

[t]he rule that instructions are to be confined to the issues applies in criminal cases. *Instructions must be tailored to the charge and the indictment, and adjusted to the evidence.*

75A Am. Jur. 2d *Trial* § 1178, at 677 (1991) (emphasis added). Accordingly, the jury charge must relate each and every essential element as alleged in the indictment.

In *State v. Davis*, 253 N.C. 86, 116 S.E.2d 365 (1960), *cert. denied*, 365 U.S. 855, 5 L. Ed. 2d 819 (1961), the indictment alleged defendant "unlawfully, willfully, feloniously while perpetrating felony, to-wit; rape, kill and murder Foy Bell Cooper . . . ." *Id.* at 88, 116 S.E.2d at 366. On appeal following conviction of first degree murder, defendant challenged the trial court's jury instructions. Our Supreme Court held:

The bill of indictment as drawn required the State to satisfy the jury by the evidence beyond a reasonable doubt that the prisoner murdered Foy Bell Cooper in the perpetration or attempt to perpetrate the crime of rape in order to justify a verdict guilty of murder in the first degree.

. . . .

*By specifically alleging the offense was committed in the perpetration of rape the State confines itself to that allegation in order to show murder in the first degree.* Without a specific allegation, the State may show murder by any of the means embraced in the statute.

*Id.* at 98-99, 116 S.E.2d at 373 (emphasis added).

In *State v. Wynne*, 246 N.C. 686, 99 S.E.2d 923 (1957), Desmo Wynne (Wynne), Bryant Moran, E.C. Brown, and Mary Hanson were charged with "having engaged in a riot in the town of Williamston." *Id.* at 686, 99 S.E.2d at 923. Following their convictions, Wynne challenged on appeal the sufficiency of the jury charge which read as follows:

If you find from the evidence in this case and beyond a reasonable doubt that Desmo Wynne assembled together with two or more other persons of his own authority and they all had an intent mutually to assist each other in [precipitating the riot], then you should return a verdict of guilty as to the defendant Desmo Wynne.

*Id.* at 687, 99 S.E.2d at 924.

Our Supreme Court reasoned:

The bill of indictment charged that the three appellants and Mary Hanson committed the offense. Therefore, *in order to convict any defendant, it was necessary for the State to prove that he participated with at least two of the three others charged.* Nevertheless, the court instructed the jury it might convict any defendant if it be found he participated with *two or more other persons.* To have justified this instruction the indictment should have charged the named defendants *and others* committed the acts constituting the offense.

*Id.* at 688, 99 S.E.2d at 924 (partial emphasis added). The Court held that since it was "impossible to tell whether the jury found each appellant engaged in a riotous assembly with as many as two of the other three named [in the indictment] or whether he so engaged with any two or more of the assembled multitude," Wynne was entitled to a new trial. *Id.*

In *State v. Mickey*, 207 N.C. 608, 178 S.E. 220 (1935), the bill of indictment read in pertinent part as follows:

That Harrison Mickey . . . unlawfully, wilfully, maliciously, and feloniously did secretly conspire and confederate with Robert H. Murphy and Howard Griffin to kill and murder one W. W. Dick . . . .

*Id.* at 608-09, 178 S.E. at 220-21. Defendant excepted to the following instruction to the jury:

The burden is on the State to satisfy you beyond a reasonable doubt that this defendant is guilty of agreeing together with Griffin or Murphy, or both of them, or others to do an unlawful thing, to wit, kill W. W. Dick, before this defendant would be guilty of violating the law.

*Id.* at 609, 178 S.E. at 221.

On appeal, the Court held the instruction which allowed the jury to convict defendant if they found he conspired with "others" to kill W. W. Dick was prejudicial error requiring a new trial. *Id.*

The bill of indictment nowhere contains the words "others" or "another," or any other word or phrase indicating a charge against the defendant of conspiring with any other person or persons than Murphy and Griffin. The charge of his Honor virtually puts the defendant upon trial for an additional offense to that named in the bill, namely, conspiring with others than Murphy and Griffin.

*Id.*

Bearing the foregoing authorities in mind, we examine the pertinent indictments in the case *sub judice* which read:

And the jurors for the State upon their oath present that on or about the ___ day of _____, 19__, in the county named above the defendant named above unlawfully, willfully and corruptly while engaged in the performance of his duties as a magistrate, did omit, neglect, or refuse to discharge a duty of his office *by failing to issue a warrant* . . . .

(emphasis added). Thus, as in *Davis*, the indictments alleged a specific act as constituting violation of the statute.

However, the trial court herein instructed the jury:

The defendant has been accused of failing to discharge the duties of magistrate. In order for you to find the defendant guilty, the

State must prove beyond a reasonable doubt, one, that the defendant was an official of the [S]tate of North Carolina. A Beaufort County, North Carolina Magistrate is an official of North Carolina.

And secondly, that he willfully failed to discharge the duties of his office. Willful means intentionally and without justification or excuse.

Thirdly, that there was injury to the public.

So I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged dates the defendant was an official of the [S]tate of North Carolina and that he willfully failed to discharge the duties of his office and that there was an injury to the public, it would be your duty to return a verdict of guilty.

In addition, shortly after beginning deliberations, the jury re-entered the courtroom with certain inquiries, including "what the magistrate's sworn duties are." The jurors were permitted to examine a copy of defendant's oath of office (State's Exhibit 17) pledging, *inter alia*, that defendant would:

faithfully and impartially discharge all the duties of Magistrate of the District Court Division of the General Court of Justice . . . .

The jury therefore was never instructed either upon the duties of a magistrate or, more importantly, upon the specific duty alleged in the indictments to have been violated. While the State concededly was not required to allege any specific act, *see State v. Kennedy*, 320 N.C. 20, 25, 357 S.E.2d 359, 363 (1987) (citation omitted), having done so, it was confined to the particular act specified. *Davis*, 253 N.C. at 99, 116 S.E.2d at 373. Moreover, the trial court was required to issue instructions "tailored to the charge and the indictment." *See* 75A Am. Jur. 2d *Trial* § 1178, at 677 (1991). We therefore hold the court's failure to include in its charge the underlying "duty" of a magistrate set out in the indictments was error.

In addition, we believe the court's omission may properly be characterized as "plain error." Assuming *arguendo* without deciding that the warrant-issuing "power" of a magistrate, *see* N.C. Gen. Stat. § 7A-273 (1989 & Cum. Supp. 1994), constitutes a "duty" to issue a warrant, it appears the jury below was permitted to reach its verdicts in the affected cases solely upon its own speculation and without

guidance from the trial court regarding the duties of a magistrate generally, much less the specific "duty" alleged to have been neglected. *See Mickey*, 207 N.C. at 610-11, 178 S.E. at 220-21 and *Wynne*, 246 N.C. at 688, 99 S.E.2d at 924; *cf. Kennedy*, 320 N.C. at 25, 357 S.E.2d at 363 (defendant's argument his right to unanimous jury verdict violated where indictments charging him with sexual offense did not allege specific act rejected where bills of particular specified act in each case and trial court in its instructions "assigned correlating specific alleged acts of sexual offense to each indictment"); *cf. also State v. Hartness*, 326 N.C. 561, 567, 391 S.E.2d 177, 180 (1990) (crime of indecent liberties a "single offense which may be proved by evidence of the commission of any one of a number of acts," and trial court properly instructed jury in the alternative).

The absence of definition in the court's instructions as to the duties of a magistrate is further highlighted by the jury inquiry on this precise point following completion of the court's charge. We therefore hold " 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty,' " *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)), and thus constituted "plain error."

Consequently, we award defendant a new trial in Count II of Case Nos. 93 CRS 1394, 1395, 1396, 1397, and Count II of Case No. 92 CRS 5863 on the charge of failing to discharge the duties of a magistrate.

## VI.

**[5]** Defendant also claims there existed a fatal variance between the indictment and the evidence concerning the charge of obtaining property by false pretense contained in Count I of Case No. 93 CRS 1395. We disagree.

The State reasserts its objection that this argument appears in violation of Appellate Rule 10(c)(1). Without commenting further on the State's claim, we elect to address defendant's contention. *See* N.C.R. App. P. 2.

"It is a rule of universal observance in the administration of criminal law that a defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment. The allegations and the proof must correspond." *State v. Muskelly*, 6 N.C. App. 174, 176, 169 S.E.2d 530, 532 (1969) (citations omitted).

The challenged portions of the indictment in question read as follows:

[T]he defendant named above unlawfully, willfully and feloniously did with intent to cheat and defraud obtaining and *attempt to obtain money in the amount of $55.00 from Deborah Johnson* by means of a false pretense.

. . . .

[D]efendant . . . did collect a total of $260.00-270.00 in U. S. Currency from Essie Mae McCotter to be used as payment for a worthless check *drawn on a Cooperative Savings and Loan account* and issued by Deborah Johnson to Radio Shack . . . .

(emphasis added).

Defendant maintains first that the evidence at trial indicated the check at issue was drawn on Wachovia Bank and not Cooperative Savings and Loan, and second that the money used to pay the check came from Essie Mae McCarter not Ms. Johnson, the alleged victim. Defendant argues each comprises a fatal variance.

As to defendant's first contention, the prosecutor below conceded that the evidence reflected the Deborah Johnson Radio Shack check was drawn on Wachovia Bank. He argued, however, that "whether or not Cooperative Savings and Loan is the right bank does not go to the issue of whether or not he accepted money for payment of the check and the court cost. The offense is accepting the court cost and not remitting it to the clerk's office."

We agree the variance between the bank name set out in the indictment and that reflected in the evidence is not fatal. "Allegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage." *State v. Taylor*, 280 N.C. 273, 276, 185 S.E.2d 677 680 (1972); *see also State v. Kornegay*, 313 N.C. 1, 31, 326 S.E.2d 881, 902 (1985) (in prosecution of attorney for obtaining $21,000 by false pretense by telling client he had settled a case against her for $125,000 when case had been settled for $104,000, State need only prove defendant settled on or before 27 April 1982, date on which defendant allegedly told client case was settled for $125,000, and allegation in indictment that settlement was completed 14 April 1982 was mere surplusage and did not have to be proven). The name of the bank on which the Deborah Johnson Radio Shack check was drawn did not comprise an element of the crime of obtain-

ing property by false pretense and was therefore surplusage not requiring proof.

We next address defendant's assertion there is a fatal variance within the indictment which charged defendant with an "attempt to obtain money . . . from Deborah Johnson by means of a false pretense," yet also alleged the funds paid in satisfaction of Ms. Johnson's Radio Shack check actually came from her mother, "Essie Mae McCotter."

The evidence at trial tended to show that defendant contacted Ms. Johnson at work for the purpose of informing her a check payable to Radio Shack had been presented to the magistrate's office as a worthless check and that she "needed to take care of it." The gist of the offense alleged in the indictment is the attempt to "obtain[] something of value from the owner thereof by false pretense." *State v. Wilson*, 34 N.C. App. 474, 476, 238 S.E.2d 632, 634, *disc. review denied* and *appeal dismissed*, 294 N.C. 188, 241 S.E.2d 72 (1977). Although the evidence indicated defendant actually obtained payment for the check from Essie Mae McCarter, Ms. Johnson's mother, neither this evidence nor the allegation thereof constituted a fatal variance. The elements of the offense were satisfied by evidence tending to establish defendant's *attempt* to obtain money by means of false pretense from Ms. Johnson. Therefore, the trial court did not err by denying defendant's motion to dismiss Count I of Case No. 93 CRS 1395.

## VII.

Defendant's final assignment of error is directed at the trial court's entry of judgment in Count I of Case No. 93 CRS 1397, which had previously been dismissed. This contention is valid.

At the close of all the evidence, the trial court stated "[t]he only thing that I don't think [the prosecution] made out on was that Deborah Johnson false pretense of the November, 1991 check to Belks of Washington." The court accordingly ordered the first count in Case No. 93 CRS 1397 dismissed. However, the record reflects judgment was subsequently issued therein. This was clear error, and we vacate that judgment of the trial court.

In sum:

Case No. 92 CRS 5863, Count II: New trial.

Case No. 93 CRS 1394, Counts I & II: New trial.

Case No. 93 CRS 1395, Count I: No error; Count II: New trial.

Case No. 93 CRS 1396, Count I: No error; Count II: New trial.

Case No. 93 CRS 1397, Count I: Vacated; Count II: New trial.

Case No. 93 CRS 1398: Reversed.

Judges GREENE and WYNN concur.