STATE OF NORTH CAROLINA v. SAQUAN DEVEL HUSSEY

No. COA08-620

(Filed 16 December 2008)

## 1. Robbery— dangerous weapon—alleged fatal variance between indictment and evidence

The trial court did not err by failing to dismiss the charge of robbery with a dangerous weapon even though defendant contends there was a fatal variance between the indictment and the evidence offered because: (1) although the indictment alleged the victim was robbed with the threatened use of a revolver whereas the evidence and jury instructions described the weapon as a pistol, gun, or firearm, the distinctions between each are not so great as to make the indictment unclear as to the nature of the crime charged; and (2) regardless of whether the indictment said firearm or revolver, defendant was on notice that the State would present evidence that he threatened the victim with a handheld weapon.

## 2. Robbery— dangerous weapon—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of robbery with a dangerous weapon based on alleged insufficient evidence because: (1) the eighty-two-year-old victim provided evidence that defendant aimed a pistol at his head, demanded money, and then took money from him; and (2) although no evidence was presented showing defendant verbally threatened the life of the victim or actually used the weapon to strike the victim, viewing the evidence in the light most favorable to the State revealed that a jury could reasonably infer that aiming a gun at someone and demanding money was sufficient evidence to show both that defendant threatened the use of a firearm and that the victim's life was endangered and threatened.

## 3. Firearms and Other Weapons— possession of firearm by felon—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of possession of a firearm by a felon because: (1) the State was required to provide substantial evidence that defendant had a prior felony conviction and a firearm in his possession; and (2) a certified copy of defendant's prior felony con-

viction was admitted into evidence, and the victim testified that defendant had a gun in his hand in the restroom.

**4. Identification of Defendants— in-court identification—refusal to identify before trial**

The trial court did not err in a robbery with a dangerous weapon and possession of a firearm by a felon case by refusing to strike the victim's testimony regarding his in-court identification of defendant as his assailant even though the victim did not identify his assailant prior to trial because: (1) defendant's only argument that his in-court identification was impermissibly suggestive was that the victim saw defendant sitting across from him in the courtroom, and this evidence alone was insufficient to show that such a confrontation tainted the in-court identification; (2) identification of defendant by the victim immediately prior to the beginning of the trial, without law enforcement involvement or suggestion, is not impermissibly suggestive; and (3) the fact that the victim had refused to attempt a pretrial identification goes to the weight rather than the competency of the testimony and is thus a matter to be considered by the jury.

**5. Sentencing— prior record level—stipulation**

The trial court did not err in a robbery with a dangerous weapon and possession of a firearm by a felon case by its sentencing even though defendant contends that nothing was offered to support the prior record level finding because: (1) prior convictions may be proved by several methods under N.C.G.S. § 15A-1340.14(f)(1) including a stipulation by the parties; and (2) sufficient evidence in the record showed defendant's prior record level was properly proven by stipulation.

Appeal by defendant from judgment entered 16 January 2008 by Judge Quentin T. Sumner in Nash County Superior Court. Heard in the Court of Appeals 9 October 2008.

*Attorney General Roy Cooper, by Special Deputy Attorney General E. Burke Haywood, for the State.*

*John T. Hall, for defendant-appellant.*

CALABRIA, Judge.

Saquan Devel Hussey ("defendant") appeals from a judgment entered upon jury verdicts finding him guilty of robbery with a danger-

ous weapon and possession of a firearm by a felon. He also appeals his sentence based on the method of determining his prior record level. We find no error.

The State presented evidence that on 22 December 2006 at approximately 4 P.M., George Walker ("Mr. Walker" or "the victim"), an 82-year-old retiree, went to McDonald's restaurant ("the restaurant" or "McDonald's") with his wife. Mr. Walker testified that after entering the restaurant, he went into the restroom. The defendant was already in the restroom. When Mr. Walker looked up, defendant pointed a pistol at his head and demanded money. Mr. Walker responded "what did you say?" The defendant responded "don't ask no questions, just do what I tell you to do." The defendant told Mr. Walker to give him his money. Mr. Walker explained what happened:

> Got it right in my pocket book, right in there and I handed it to him just like this here . . . and he opened it with his right hand, took it up under his arm like that, took the money out of the pocket book and put it in his pocket. And I said now give me my pocketbook back because my social security card. I reached over and took my pocketbook from him, put it my pocket like this. He said, you've got more money than that, give me that damn pocketbook back. I said, well you ought to know, you looked in it. I took it out of my pocket and handed it back to him. He looked in it again and thumbed through it, thumbed through it. I kept noticing that gun, that gun was dead on me and so he shut it back up like that and I reached over and took the pocketbook and put it back in my pocket. He said, give me that damn pocketbook back, you telling a damn lie, you've got more money than that. I said, you ain't getting that damn pocketbook cause I forgot he got a gun to my head and I shouldn't have said that and I looked up and that gun was still pointed at my head. And all at once everything just went out like it blew a lamp out. I just hit the floor, I reckon, and so in a few minutes—I don't know how long I was down there . . . . But anyway, I tried to get up and I couldn't get up so I laid back down there a minute or two. In a few minutes I reached up there and got a hold of the urinal like this here, and pulled myself up on my knees and my head stopped swimming a little bit and so I got up from there and I went on out and I went and told my wife what had happened . . . .

Although prior to trial Mr. Walker chose not to attempt to identify defendant through a photo lineup, at trial he immediately and confi-

dently identified the defendant as his attacker. Several other State witnesses confirmed that one of defendant's two friends arrived at the McDonald's in a grey car and also left in a grey car. The driver of the grey car was Montrell Sumlin ("Sumlin"). Sumlin told a detective later that upon entering the car defendant told him he knocked a man out in the restroom and took ten dollars from him.

The jury returned verdicts finding defendant guilty of robbery with a dangerous weapon and possession of a firearm by a felon. During the sentencing phase, the prosecution presented a worksheet used to calculate defendant's prior record level. The worksheet listed defendant's prior convictions and defendant's points were calculated for a total of eleven points which classified defendant's prior record level as a level IV. Section III of the worksheet was entitled "STIPU-LATION" and stated that defense counsel stipulated that the information on the worksheet was accurate. Both the prosecutor and defendant's counsel signed this worksheet.

Defendant was sentenced to a minimum of 117 to a maximum of 150 months for robbery and a minimum of 20 to a maximum of 24 months for possession of a firearm by a felon, both sentences were to be served in the North Carolina Department of Correction. Defendant appeals.

## I. Variance in the Indictment

[1] The defendant contends that there was a fatal variance between the indictment and the evidence offered. The indictment alleges that Mr. Walker was robbed "with the threatened use of a revolver, a dangerous weapon." The evidence presented at trial, as well as the jury instructions, described the weapon as a "pistol," "gun," or "firearm." The defendant contends that this distinction between a firearm and a revolver is fatal to his conviction. We disagree.

The purpose of the criminal indictment is "[f]irst, to make clear the offense charged so that the investigation may be confined to that offense, that proper procedure may be followed, and applicable law invoked; second, to put the defendant on reasonable notice so as to enable him to make his defense." *State v. Palmer*, 293 N.C. 633, 636, 239 S.E.2d 406, 409 (1977). Therefore, "[t]he allegations [in the indictment] and the proof must correspond." *State v. Rhome*, 120 N.C. App. 278, 298, 462 S.E.2d 656, 670 (1995) (citation omitted).

The General Statutes of North Carolina, under the heading "Firearm Regulation" define a firearm as "[a] handgun, shotgun, or

rifle which expels a projectile by action of an explosion." N.C. Gen. Stat. § 14-409.39 (2007). A handgun is defined as "[a] pistol, revolver, or other gun that has a short stock and is designed to be held and fired by the use of a single hand." *Id.* This statute indicates that a revolver is a handgun and a handgun is included in the definition of a firearm. To the extent there are distinctions between each, these distinctions are not so great as to make the indictment unclear as to the nature of the crime charged. Whether the indictment said firearm or revolver the defendant was on notice that the State would present evidence that he threatened the victim with a handheld weapon. That level of specificity is sufficient, and there was no fatal variance between the indictment and the evidence.

## II. Sufficiency of the Evidence

[2] The defendant argues that the trial court erred by denying defendant's motion to dismiss the charges based on insufficiency of the evidence. We disagree.

The standard of review for the court's denial of a motion to dismiss for insufficient evidence is whether when considered in the light most favorable to the State, there is substantial evidence of each essential element of the offense charged and that defendant is the perpetrator. *State v. Robbins*, 309 N.C. 771, 774-75, 309 S.E.2d 188, 190 (1983). "Substantial evidence is defined as that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Porter*, 303 N.C. 680, 685, 281 S.E.2d 377, 381 (1981) (internal quotations and citations omitted).

The elements of robbery with a dangerous weapon are: "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of the person is endangered or threatened." *State v. Mann*, 355 N.C. 294, 303, 560 S.E.2d 776, 782 (2002) (internal citations omitted).

Mr. Walker provided evidence that the defendant aimed a pistol at his head, demanded money, then took money from him. Defendant argues the testimony that the 82-year-old victim took his pocket book back from his assailant and said "You ain't getting that damn pocket book" shows that the victim's life was not threatened or endangered. Although no evidence was presented showing the defendant verbally threatened the life of the victim, or actually used the weapon to strike the victim, viewing the evidence in the light most favorable to the

State, a jury could reasonably infer that aiming a gun at someone and demanding money is sufficient evidence to show both that defendant threatened to use a firearm and that the victim's life was endangered and threatened. Therefore, there was substantial evidence presented on each element of the charge of robbery with a dangerous weapon.

[3] The crime of possession of a firearm by a felon states "[i]t shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm or any weapon of mass death and destruction as defined in G.S. 14-288.8(c)." N.C. Gen. Stat. § 14-415.1 (2007). Therefore there are two elements to the offense. The State must provide substantial evidence that the defendant has a prior felony conviction, and a firearm in his possession. A certified copy of defendant's prior felony conviction was admitted into evidence, and the victim testified that the defendant had a gun in his hand in the restroom. Viewed in the light most favorable to the State, there was sufficient evidence presented on each element of the offense of possession of a firearm by a felon. This assignment of error is overruled.

### III. In-Court Identification

[4] The defendant argues that the trial court erred by refusing to strike the victim's testimony regarding his in-court identification of the defendant as his assailant.

The victim did not identify his assailant prior to trial. When contacted for a photo lineup the victim refused to view the pictures. It was not until he was seated in the courtroom prior to the beginning of the trial that he viewed the defendant for the first time since the robbery. Defendant was seated at the defense table, and the victim recognized the defendant as his assailant.

An identification at an unnecessarily suggestive pretrial identification procedure is not inadmissible unless the procedure employed was so suggestive that there is a substantial likelihood of irreparable misidentification. *State v. Flowers*, 318 N.C. 208, 220, 347 S.E.2d 773, 781 (1986). "Even though a pretrial identification procedure may be suggestive, it will be impermissibly suggestive only if all the circumstances indicate that the procedure resulted in a very substantial likelihood of irreparable misidentification." *State v. Harris,* 308 N.C. 159, 164, 301 S.E.2d 91, 95 (1983).

We have held that the viewing of a defendant in the courtroom during the various stages of a criminal proceeding by wit-

nesses who are offered to testify as to identification of the defendant is not, of itself, such a confrontation as will taint an in-court identification unless other circumstances are shown which are so unnecessarily suggestive and conducive to irreparable mistaken identification as would deprive defendant of his due process rights.

*State v. Covington,* 290 N.C. 313, 324, 226 S.E.2d 629, 638 (1976). As in *Covington,* the defendant's only argument that his in-court identification was impermissibly suggestive was that the victim saw the defendant sitting across from him in the courtroom. This alone is insufficient to show that such a confrontation tainted the in-court identification.

In *State v. Bass,* 280 N.C. 435, 186 S.E.2d 384 (1972), the North Carolina Supreme Court was presented with similar facts. The victim in *Bass* did not attempt to identify one of her attackers prior to a preliminary hearing. She saw one of the defendants for the first time after her attack when she walked into the courtroom for the preliminary hearing. She testified that she recognized the defendant "as soon as I came into the room. He was seated over on one side of the room against the wall." *Id.* at 452, 186 S.E.2d at 395-96. The trial court in *Bass* held that this procedure was not impermissibly suggestive, and the Supreme Court agreed stating that nothing in the record indicated "that the preliminary hearing was rigged for the purposes of identifying [the defendant]." *Id.* at 452, 186 S.E.2d 395. Further the Court held

Her positive in-court identification of [defendant] suffices to carry the case to the jury. The fact that she failed to identify him from photographs and the fact that there were discrepancies and contradictions in her testimony at the preliminary hearing, if such there were, goes to the weight rather than the competency of the testimony and is thus a matter to be considered by the jury.

*Id.* at 452, 186 S.E.2d at 396.

Pursuant to *Bass,* we hold that the identification of the defendant by the victim, immediately prior to the beginning of the trial, without law enforcement involvement or suggestion, is not impermissibly suggestive. The victim's in-court identification is competent evidence. The fact that the victim had refused to attempt a pretrial identification "goes to the weight rather than the competency of the testimony and is thus a matter to be considered by the jury." *Id.* We find no error.

## IV. Record Level Findings

[5] Defendant contends that the trial court erred in sentencing because nothing was offered to support the prior record level finding. We disagree.

Prior convictions may be proved, by several methods, including a stipulation of the parties. N.C. Gen. Stat. § 15A-1340.14(f)(1) (2007). Here, defendant's prior record level was properly proven by stipulation. Included in the record on appeal is form AOC-CR-600 entitled "Prior Record Level For Felony Sentencing." In Section I, defendant was found to have accumulated eleven points for prior felony and misdemeanor convictions and was classified as a prior record level IV offender. Section IV lists the defendant's prior convictions. Section III is entitled "Stipulation" and states:

> The prosecutor and defense counsel, or the defendant if not represented by counsel, stipulate to the accuracy of the information set out in Sections I. and IV. of this form, including the classification and points assigned to any out-of-state convictions, and agree with the defendant's prior record level or prior conviction level as set out in Section II.

Both the prosecutor and defense counsel signed this stipulation.

It has been established "[t]he State does not satisfy its burden of proving defendant's prior record level merely by submitting a prior record level worksheet to the trial court." *State v. Jeffery*, 167 N.C. App. 575, 579, 605 S.E.2d 672, 675 (2004). However, in *Jeffery*, and the cases on which *Jeffery* relies, the prior record level worksheet that was submitted to the trial court did not include the stipulation that is now found in Section III. The prior record level worksheet was modified in 2003 to include the stipulation section. A signed stipulation is adequate to establish a prior record level so long as "its terms . . . [are] definite and certain in order to afford a basis for judicial decision . . . ." *State v. Alexander*, 359 N.C. 824, 828, 616 S.E.2d 914, 917 (2005).

Sufficient evidence in the record shows defendant stipulated to his prior record level pursuant to N.C. Gen. Stat. § 15A-1340.14(f)(1). Both the prosecutor and defense counsel signed this stipulation. The trial court did not err by determining defendant's prior record level was a level IV. This assignment of error is overruled.

Defendant has failed to bring forth any arguments regarding his remaining assignments of error, and therefore has abandoned these assignments of error pursuant to N.C.R. App. P. 28(b)(6) (2007).

No error.

Judges TYSON and McCULLOUGH concur.